617 F.2d 136
 EA SHIPPING COMPANY, INC., Plaintiff-Appellant,
v.
Albert F. BAZEMORE et al., Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellee,
v.
ONE (1) LIBERIAN REFRIGERATOR VESSEL, M/V EA, Official No.
3524, approximately 100.41 meters in length, Defendant.
BANQUE FRANCAISE DU COMMERCE EXTERIEUR, Intervening Plaintiff-Appellee,
v.
M/V, her engines, tackle, apparel, appurtenances, etc., in
rem, and Ea Shipping Co., Inc., her owner, in
personam, Defendants-Appellants.
 Nos. 78-1252, 78-1256.
 United States Court of Appeals,
Fifth Circuit.
 May 16, 1980.
 
 Dewey R. Villareal, Jr., Tampa, Fla., Edwin Longcope, Allan J. Berdon, New York City, for appellants.
 Martin H. Sachs, Atty., U. S. Dept. of Justice, Washington, D. C., Anthony J. La Spada, Asst. U. S. Atty., Tampa, Fla., Richard S. Friedland, Asst. Regional Counsel, U. S. Customs Service, Miami, Fla., for appellees, U. S.
 Appeals from the United States District Court for the Middle District of Florida.
 Before JONES, GEE and REAVLEY, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from a judgment of forfeiture of the M/V EA after a bench trial in the district court. The judge below concluded that there was probable cause for seizure of the vessel, that it was not a common carrier, and that if it was a common carrier, the government established that the master was a consenting party or privy to the illegal importation of cocaine because he had actual knowledge of its presence aboard the ship. United States v. One (1) Liberian Refrigerator Vessel, 447 F.Supp. 1053 (M.D.Fla.1977). After reviewing the record we are unable to say that the lower court was clearly erroneous in finding that the master of the ship had actual knowledge of the presence of cocaine on board; consequently, we affirm.
 
 
 2
 In the early morning hours on June 17, 1976, Customs authorities converged on individuals who were observed covertly passing dark packages out of a porthole on the M/V EA in Tampa, Florida. The vessel had been on round trip voyages between Turbo, Colombia, and Tampa, Florida, for at least two years. The participants fled upon approach of officials, but searches that day and the days that followed netted large quantities of cocaine. The contraband was eventually discovered on the vessel, in the water in the vicinity of the ship, and in nearby fields. The government thereafter seized the vessel and brought a forfeiture suit pursuant to 49 U.S.C. § 782 (1976), 21 U.S.C. § 881 (1976), and 19 U.S.C. § 1594 (1976), alleging that the ship had been used to facilitate the importation of cocaine. BANQUE FRANCAISE DU COMMERCE EXTERIEUR (BFCE), which held a First Preferred Ship's Mortgage was granted leave to intervene, and eventually summary judgment foreclosing its lien was entered in its favor. EA Shipping Company (EASC) filed a separate action seeking damages from various federal officials for the wrongful seizure and detention of the M/V EA and for the deterioration of the vessel after it was seized. The cases were consolidated and after a trial to the bench, the lower court entered a judgment forfeiting the M/V EA to the government and a judgment denying relief to EASC. The court subsequently ordered that the ship be sold and that sums sufficient to extinguish the mortgage debt be paid over to BFCE from the proceeds. EASC brought this appeal arguing only that it had established that the M/V EA was a "common carrier" within the meaning of the forfeiture statutes and that the owners and master of the vessel were not privy or consenting parties to illicit activity.
 
 
 3
 EASC does not contest the fact that the government established probable cause for bringing this forfeiture action. See generally United States v. One 1978 Chevrolet Impala, 614 F.2d 983 (5th Cir. 1980). Thereafter, the burden shifted to EASC under the forfeiture provisions to establish by a preponderance of the evidence that the conveyance was being operated as a common carrier. Cf. United States v. One 1975 Ford Pickup Truck, 558 F.2d 755, 756 (5th Cir. 1977) (per curiam); United States v. One 1972 Toyota Mark II, 505 F.2d 1162, 1164 (8th Cir. 1974) (both cases construe the parallel exception in the forfeiture statutes for violations committed by a person who unlawfully acquires possession of the vehicle).
 
 
 4
 In this case, however, the common carrier exception is unavailing because the government produced sufficient proof that the master of the M/V EA had actual knowledge of the presence of cocaine aboard the ship. Boatswain Felita testified that he observed Captain Maarleveld standing in the doorway of the cabin shared by crewmen Rodolpho L. Sarco Laurido and Ortega Ospina for approximately five minutes at a time when large packages of cocaine were strewn about the room. EASC emphasizes what it contends are inconsistencies in Felita's testimony regarding whether the Captain was standing by, coming from, or remained in the doorway. The incompatibility of various segments of Felita's testimony is exaggerated. The witness is a native of Caracao who was trilingual; Dutch is his native tongue. His comprehension of English was good but it is apparent that his facility with the language was somewhat impaired. Nevertheless, the clear thrust of his testimony was that the master stood in the cabin or its doorway for about five minutes while packages of cocaine were littered about the crewmembers' quarters.
 
 
 5
 EASC argues that the lower court should not have credited Felita's testimony because he was a convicted felon who had on previous occasions given sworn statements that he had no knowledge of cocaine aboard the M/V EA. EASC also points out that Felita apparently stated to a government attorney that he overheard the Captain ask a crewman why he was leaving service on board the M/V EA when the crewmember could make more money smuggling cocaine while working on the ship. At trial, Felita testified that the Captain's words were related to him by another crewman. Finally, EASC accentuates the fact that Captain Maarleveld denied ever being in the presence of cocaine and that the depositions of the officers and crew, to the effect that they did not bring cocaine aboard and they did not observe any on the final voyage, were introduced into evidence.
 
 
 6
 The lower court acknowledged the fact that Felita had pleaded guilty to a charge of possession of cocaine with intent to deliver. However, since the episode resulting in the conviction was unrelated to the activities of the M/V EA, he considered it not to be of dispositive significance in relation to Felita's veracity. One (1) Liberian Refrigeration Vessel, 447 F.Supp. at 1066 n.12. We would also point out that Felita offered an explanation of the events surrounding his arrest which suggests that he was protecting his family by pleading guilty. Record, Vol. IV at 63-64. Felita admitted prevaricating in earlier sworn testimony when he stated that he knew nothing about cocaine aboard the vessel. But he claimed that these earlier statements were the product of threats on his life should he reveal any information regarding the contraband. Felita's fear was apparently warranted because Captain Maarleveld testified that at least one person had met an untimely end attempting to halt the cocaine traffic from Turbo, Colombia. Much of the deterrence of the threats was removed by the time of trial because Felita was serving a sentence in a Florida correctional institution on his conviction. Finally, the testimony of the crew and officers of the M/V EA is inconsistent with Felita's version only to the extent of those participating in the smuggling. In addition, each officer and member of the crew had an interest in divorcing himself from suspicion of criminal activity and in avoiding any sanctions which EASC might mete out for failing to report the presence of the narcotic. We note also that Felita's testimony was corroborated to an extent by Officer Bruce Meader. Meader testified that he observed packages, which were later determined to contain cocaine, being passed from a porthole in the cabin shared by Laurido and Ospina on the morning of June 17, 1976.
 
 
 7
 Giving due regard to the district court's credibility choice, Edwards v. Gladewater Independent School District, 572 F.2d 496, 497 (5th Cir. 1978), we cannot say that it was clearly erroneous in concluding that the master had actual notice of the presence of the cocaine. The ship became subject to forfeiture because he countenanced this condition.
 
 
 8
 AFFIRMED.