**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**ONE 1979 PORSCHE COUPE, VIN
9289200514, Defendant,**

**Clarence Lee McDowell,
Claimant-Appellant.**

**No. 82–8558
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

July 18, 1983.

---

Douglas Edward Cobb, Norcross, Ga., for 1979 Porsche.

Kathie McClure, Myra H. Dixon, Asst. U.S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, VANCE, and ANDERSON, Circuit Judges.

PER CURIAM:

This case involves the seizure of a 1979 Porsche automobile by virtue of its alleged use in facilitating a drug transaction. Claimant, Clarence Lee McDowell, was convicted in the United States District Court for the Northern District of Georgia of attempt to possess with intent to distribute cocaine hydrochloride in violation of 21 U.S.C.A. § 846 (West 1981). The United States then instituted proceedings under 21 U.S.C.A. § 881 (West 1981) for forfeiture of McDowell's vehicle, a 1979 Porsche Coupe. After a non-jury trial, the court entered judgment for the United States, finding

that the government had demonstrated probable cause for the forfeiture. In this appeal from that judgment, McDowell contends that the government did not make the showing necessary to justify a forfeiture because (a) the government did not prove a sufficient nexus between the use of the vehicle and the attempted illegal transaction, and (b) McDowell's actions did not amount to an "attempt" to purchase a controlled substance. Additionally, McDowell asserts that illegally obtained evidence excluded from his criminal trial was improperly admitted during the forfeiture proceeding. We disagree, and affirm the forfeiture order.

## I. FACTS

The record below demonstrates that McDowell was the owner of a 1979 Porsche, the subject matter of this forfeiture proceeding. On August 1, 1979, McDowell drove the Porsche from his home in Knoxville, Tennessee, to Atlanta, Georgia. Upon his arrival, he registered at the Marriott Hotel at Perimeter Mall in Atlanta, and then drove to a friend's house where he spent the night. The next day, after receiving a phone call, McDowell drove back to the Marriott, where he met in his hotel room with Charles Crane and Fernando Delmau to discuss the possible purchase by McDowell of one kilogram of cocaine. Unknown to McDowell, Crane was a DEA agent and Delmau was an informant for the DEA. Although the parties were unable to agree on all terms, it was established that McDowell would pay $58,000 for the cocaine; McDowell told the agents that the money was nearby and readily obtainable. Later in the day, McDowell again met with the two agents in his hotel room to attempt to arrive at a complete agreement. The two agents proffered the cocaine, wrapped in clear plastic, but upon examina-

tion McDowell declined to purchase the cocaine. According to Agent Crane, McDowell stated that "he did not like the quality of the cocaine, it was like nothing he had ever seen before." In fact, the substance was *not* cocaine. Shortly thereafter, the agents arrested McDowell.

According to McDowell, he and Delmau were old acquaintances. On an earlier occasion, Delmau had told McDowell that he had been forced to go under cover for the DEA because of various legal problems relating to narcotics. Apparently, Delmau needed to buy time with the government until he could resolve his problems.[1] McDowell asserts that he therefore agreed to work with Delmau in setting up a "sham" drug deal, in which no purchase would actually be consummated. In support of this story, McDowell points out that after his arrest agents were unable to find any of the money which McDowell had claimed to have nearby when negotiating the transaction.

After McDowell's conviction for attempting to purchase cocaine, the government instituted this proceeding for the forfeiture of the Porsche in which McDowell drove to Atlanta.[2] After a non-jury trial, the trial court concluded that the vehicle had been used to facilitate the attempted purchase and therefore ordered the vehicle forfeited.

## II. FORFEITURE

 To support a forfeiture under § 881, the government must demonstrate probable cause for the belief that a substantial connection exists between the vehicle to be forfeited and the relevant criminal activity. Probable cause in this context is defined as a reasonable ground for a belief of guilt, supported by less than prima facie proof but more than mere suspicion. *Unit-*

---

1. According to McDowell's testimony, the government was holding over Delmau the prospect of deportation.

2. 21 U.S.C.A. § 881(a)(4) states:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

 * * * * * *

 (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) . . . .

ed States v. $364,960 in U.S. Currency, 661 F.2d 319, 323 (5th Cir.1981).[3] After the government has made the necessary showing, the burden of proof shifts to the claimant to demonstrate by a preponderance of the evidence that the vehicle was not used to facilitate a narcotics transaction. *Id.* at 325; *see E.A. Shipping Co. v. Bazemore,* 617 F.2d 136, 138 (5th Cir.1980). In our view, the government has made the necessary showing and the claimant has failed to rebut that showing.

■ McDowell used the automobile to drive from Knoxville to Atlanta the evening prior to negotiations. Once in Atlanta, he again used the vehicle to drive to the hotel where the negotiations took place.[4] Although McDowell had offered $58,000 for the cocaine, there was no evidence that the vehicle was used to transport any money, as no money was in fact found. *Compare United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984–85 (5th Cir.1980) (forfeited vehicle used to transport ingredients for making drugs); *United States v. One 1979 Mercury Cougar XR–7,* 666 F.2d 228, 230 (5th Cir.1982) (conspirators used forfeited vehicle to locate airstrip, find storage building for marijuana, rent motor home in which to live while selling marijuana, and rent U-Haul truck in which to transport marijuana). Nonetheless, the cases establish that under § 881 it is not necessary for the subject vehicle either to have transported the illegal substance (or the purchase money) or to have served as the location for the transaction. *See United States v. One 1977 Cadillac Coupe DeVille,* 644 F.2d 500, 503 (5th Cir.1981) (Unit B); *United States v. One 1979 Mercury Cougar XR–7,* 666 F.2d at 230; *United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421, 427 (2d Cir.1977). The subject vehicle in this case was used to transport the "pivotal figure in the transaction" several hundred miles to the precise location at which the

attempted purchase took place. *See United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d at 427 (forfeiture appropriate where vehicle transported defendant to meeting where purchase negotiated; not dispositive transaction not consummated until three days later).

In particular, this case is governed by *United States v. One 1977 Cadillac Coupe DeVille, supra.* In that case, a panel of the former Fifth Circuit upheld the forfeiture of an automobile whose sole connection with the crime was its use in transporting a narcotics supplier "to the actual scene of the transaction." 644 F.2d at 503. As in this case, the subject automobile had transported neither contraband nor money. We thus hold that the Porsche had a sufficient nexus to the attempted drug purchase to support the forfeiture.

McDowell also argues that his conduct, viewed objectively, does not legally constitute the crime of "attempt." He contends that because the subject of the transaction was not actually cocaine, and because the absence of money indicates he did not seriously intend to negotiate a drug transaction, objective acts corroborating his intent are totally lacking. *See United States v. Korn,* 557 F.2d 1089, 1091 (5th Cir.1977). In addition, he argues that he renounced any criminal purpose when he rejected the sham cocaine. These contentions, however, have all been decided adversely to McDowell in his direct appeal from his conviction. *United States v. McDowell,* 705 F.2d 426, 428–29 (11th Cir.1983). Accordingly, these arguments are without merit.

## III. USE OF EVIDENCE FROM UNLAWFUL SEARCH

■ During McDowell's trial on the criminal charge, the court excluded from evidence a Tupperware container containing traces of cocaine hydrochloride which had

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**4.** During the negotiations the vehicle was parked in the hotel parking lot, approximately 500–600 feet from McDowell's room.

been procured in an unlawful search of McDowell's car. During the forfeiture hearing, however, the government was allowed to introduce this evidence in order to impeach statements McDowell had made on cross-examination.[5] McDowell contends that the trial court erred in allowing the use of this evidence on cross-examination.

In *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), the Supreme Court held that illegally obtained evidence may be used to impeach a statement made by a defendant on cross-examination when the statement being impeached is in response to a question that was reasonably suggested by the defendant's direct testimony. *Id.* at 626, 100 S.Ct. at 1916.[6] In the case at bar, the previously excluded evidence was admitted to impeach McDowell's statements on cross-examination that he had neither purchased cocaine before nor ever dealt in cocaine. Record on Appeal, vol. 2, at 56–57. In our view, these questions were reasonably suggested by McDowell's testimony on direct examination to the effect that he had not driven to Atlanta with the intent to purchase cocaine and had not planned to transport cocaine back to Knoxville in the vehicle. *See United States v. Hernandez,* 646 F.2d 970, 977–78 (5th Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981). We therefore hold that the use of the illegally obtained evidence to impeach McDowell's testimony on cross-examination was proper.

Accordingly, the order of forfeiture is AFFIRMED.

---

5. Apparently, this same excluded evidence was also used during McDowell's criminal trial to impeach his testimony on cross-examination. *See* Record on Appeal, vol. 2, at 58.

6. *Havens* requires that the cross-examination question which elicited the statement to be impeached must have been "suggested to a reasonably competent cross-examiner by ... [the defendant's] direct testimony." 446 U.S. at 626, 100 S.Ct. at 1916. It is not necessary that the evidence be directed toward a *specific statement* made by the defendant during direct examination. *Id.* at 624–26, 100 S.Ct. at 1915–16.