**UNITED STATES of America, Plaintiff,**

v.

**ONE (1) 1984 MERCEDES BENZ, VEHICLE IDENTIFICATION NO. WDBBA45AOEA005388, Defendant.**

**Fred M. MURRELL, Counterclaim–Plaintiff,**

v.

**UNITED STATES of America, Counterclaim–Defendant.**

**Civ. No. 86–1129.**

United States District Court, D. Hawaii.

Nov. 6, 1987.

Daniel Bent, U.S. Atty., Florence T. Na-kakuni, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff.

Reinwald, O'Connor & Marrack, Dennis E. W. O'Connor, Steven J. McHugh, Honolulu, Hawaii, for Fred M. Murrell.

## MEMORANDUM DECISION GRANTING MOTION FOR ISSUANCE OF CERTIFICATE OF REASONABLE CAUSE

PENCE, Senior District Judge.

This is a forfeiture action by the United States against a Mercedes Benz allegedly used to transport cocaine. The owner of the vehicle, Fred Mack Murrell ("Murrell"), is the only claimant and has filed counterclaims arising out of his arrest and prosecution and the seizure of the vehicle. In June 1987, this court dismissed the complaint on the ground that undue delay by the United States following the seizure of the vehicle violated Murrell's constitutional right to due process of law. The United States now moves for a certificate of reasonable cause, to insulate it from costs and its agents from civil liability.

*Factual Background*

On May 10, 1986, Dennis Peterson, a Honolulu Police Department ("HPD") Officer assigned to the Drug Enforcement Agency Airport Task Force ("DEA ATF"), received a telephone call from Detective Gallagher of the Portland Airport Inter-agency Narcotics Team. Gallagher related that an employee of Northwest Orient Airlines ("NWOA") had opened an air-freight package addressed to Fred Murrell, discovered white powder, and turned the package over to Gallagher. Agents of the Portland Airport Interagency Narcotics Team performed a field test on the powder with positive results for cocaine. Gallagher further advised that he would send the package to Peterson.

The package arrived in Honolulu on May 11, 1986 and was picked up by Steve Logan, a HPD Officer assigned to the DEA ATF. Logan performed a field test on the contents of the package, with positive results for cocaine, and repackaged the contents for pick-up by Murrell. Also on May 11, a caucasian man calling himself Fred Murrell appeared at the NWOA air cargo counter and asked for the package. NWOA employee Amy Mekelwat told him the package was not there, and observed him driving away in a Mercedes Benz 380 SL with Oregon license plates.

On May 12, 1986, Murrell called NWOA and said that he was coming to pick up the package. At the air cargo counter, Murrell identified himself with an Oregon drivers license to Agent Robert Turner of the DEA ATF, who was posing as a NWOA employee. Agent Turner gave Murrell the package, and Murrell departed. Agent Logan and Karen Huston, a HPD Officer assigned to the DEA ATF, who were posted outside, failed to pick up Murrell as he left. No one saw him leave the airport.

Agents Turner, Logan, and Huston, knowing Murrell's address, went to his residence at the Colony Surf condominium in Waikiki. They looked for his vehicle but did not see it in the parking lot. Turner called Murrell's phone number but an answering machine responded. Turner then knocked on Murrell's front door. Murrell answered the door. Turner, resuming his pose as a NWOA employee, told Murrell that he had made a mistake and needed to get a number from the packaging and to look at the receipt.

Murrell turned and walked into his kitchen. Turner walked through the open door into the apartment. Murrell took the now empty package from a trash can and the receipt from a counter and gave them to Turner. Turner then identified himself as a DEA agent and Logan and Huston entered the apartment. Logan and Huston identified themselves and Murrell was advised that the agents were conducting a narcotics investigation. Huston gave Murrell the *Miranda* warnings and asked if he would consent to a search of his apartment. Murrell refused.

Logan conducted a "protective sweep" of the apartment and observed on a counter in the bathroom a partially burned handrolled cigarette containing what appeared to be marijuana. Logan left to get a search warrant. Turner and Huston remained in the apartment to prevent Murrell from leaving or destroying any evidence for about four hours. While waiting for the search warrant, Murrell admitted to Turner that he used the vehicle to pick up the package at the airport. Murrell also asked Turner, "What will happen if I show you where it is?"

A search warrant based upon Logan's affidavit was obtained. Logan's affidavit contained no information gained during the protective sweep, but concluded with the information that Murrell had given Turner the empty package. Once the search warrant was obtained, Turner asked Murrell if he wanted to show them where the cocaine was. Murrell pointed to a night stand in the bedroom, from which Turner recovered a black film cannister containing the bag of cocaine Logan had field tested. Logan placed Murrell under arrest. Logan and Agent James Strickland seized the vehicle from the parking lot of Murrell's building later that day.

The U.S. Attorney declined to prosecute any criminal charges in the case. However, the State of Hawaii prosecuted Murrell for possession of the cocaine. On October 7, 1986, a state court judge suppressed all evidence found by the police in Murrell's apartment, holding in pertinent part:

3. The police "seized" the Defendant's home, within the meaning of the Fourth Amendment and Article I, Section 7 of the Hawaii State Constitution, the moment they entered it on May 12, 1986, without a search warrant.

\* \* \* \* \* \*

8. This warrantless seizure of the home then, and the curtailing of the occupant's movement within it, was [sic] unconstitutional under the search and seizure [sic] of this State. [*State v.*] *Dorson,* 62 Haw. [377] at 381, 615 P.2d [740] at 744 [1980]; *State v. Lloyd, supra.*

The United States initiated this forfeiture proceeding in December 1986. Murrell filed a claim for the vehicle and a counterclaim against the United States for damages arising out of the seizure. On June 11, 1987, this court dismissed the complaint of the United States on the ground that the delay between the seizure of the vehicle and the filing of the forfeiture action constituted a denial of Murrell's right to due process of law.

*Motion for Certificate of Reasonable Cause*

The United States moves this court to issue a certificate of reasonable cause pursuant to 28 U.S.C. § 2465, which provides:

Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the Court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

A vehicle can lawfully be seized if there is probable cause to believe that it is subject to forfeiture. 21 U.S.C. § 881(b)(4). A vehicle is subject to forfeiture if it is used, or is intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance. Therefore, the cer-

tificate of reasonable cause should issue if the agents had probable cause to believe that the vehicle had been used to transport the cocaine from the airport to Murrell's apartment.

Murrell opposes the motion, arguing that this court cannot consider any evidence suppressed in the state court proceedings in determining whether the agents had reasonable cause to seize the vehicle.

### I. Collateral Estoppel

Although Murrell does not invoke the doctrine of collateral estoppel by name, he seeks to preclude the United States from litigating the admissibility of the evidence seized at Murrell's apartment and Murrell's statement to Turner based upon the state court order. Collateral estoppel is not generally applicable unless there exists either identity or privity between the parties to the relevant litigation. The person being estopped must have been either a party to the prior lawsuit or have been so closely related to the interest of the party to be fairly considered to have had his day in court. *In re Gottheiner,* 703 F.2d 1136, 1139 (9th Cir.1983).

 The parties to the prior action were Murrell and the State of Hawaii. The Hawaii court ruled that the seizure of the apartment violated both the Hawaii Constitution and the Fourth Amendment of the United States Constitution, and that all evidence obtained as a result of that seizure was inadmissible. The holding with respect to the Hawaii Constitution is not relevant in this proceeding because federal law, not state law, controls whether the agents had probable cause. *United States v. Prescott,* 581 F.2d 1343, 1348 (9th Cir. 1978). The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed. *Elkins v. United States,* 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960).

 Additionally, the state court's holding with respect to the United States Constitution is not binding on this court. *United States v. Burt,* 619 F.2d 831, 837 (9th Cir.1980). A state court ruling suppressing evidence does not preclude a federal court from making an independent inquiry into the constitutional validity of the search. *United States v. Smith,* 595 F.2d 1176, 1179 (9th Cir.1979). Moreover, collateral estoppel appears not to apply in this situation because the party to be estopped, the United States, was not a party to the prior litigation.

### II. Constitutional Analysis

The parties agree that the initial opening of the package by NWOA employees and the field tests of the powder by law enforcement agents were legal. *See United States v. Jacobsen,* 466 U.S. 109, 115, 123, 104 S.Ct. 1652, 1657, 1661–62, 80 L.Ed.2d 85 (1984). The controversy concerns the activities of Turner, Logan, and Huston at Murrell's apartment before they had obtained a warrant.

### A. The Arrest

 Turner's initial entry into the apartment by posing as a NWOA employee was legal. The warrantless entry of a home by deception is not a violation of the Fourth Amendment. *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed. 2d 312 (1966). Murrell's acts of leaving the door open, permitting Turner to come inside, and handing him the materials in the kitchen constituted implied consent to Turner's entry into the apartment. *See United States v. Miller,* 688 F.2d 652, 659 (9th Cir.1982). This type of consent must be voluntarily given and not be the result of duress or coercion, express or implied, but need not meet the standard of *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), which requires an intentional relinquishment or abandonment of a known right or privilege. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973).

 Similarly, Turner's viewing of the empty package and the receipt was consented to by Murrell, and did not violate the Fourth Amendment. However, Turner then proceeded to make a warrantless arrest inside Murrell's home. Although the

agents did not tell Murrell he was under arrest until after they executed the search warrant, he was arrested long before then. Turner identified himself as a DEA agent and let the other two in, Huston gave Murrell the Miranda warnings, and the agents did not permit Murrell to leave. Therefore, Murrell was arrested and "in custody" before he made the statement to Turner. *See United States v. Pinion*, 800 F.2d 976, 979 (9th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987).

The United States cites two cases for the proposition that a warrantless entry into a home by ruse or deception to make an arrest is not a violation of the Fourth Amendment, *United States v. Beale*, 445 F.2d 977 (5th Cir.1971), and *United States v. Syler*, 430 F.2d 68 (7th Cir.1970). Ninth Circuit law at that time was in accord. *Ponce v. Craven*, 409 F.2d 621 (9th Cir. 1969). However, these cases were decided before the Supreme Court held that the Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980); *see also United States v. Prescott*, 581 F.2d 1343, 1349–50 (9th Cir.1978).

Since *Payton*, the Seventh Circuit has decided this issue favorably to the United States. In *United States v. Paul*, 808 F.2d 645, 648 (7th Cir.1986), the defendant invited an informant into his house and showed him bales of marijuana in the basement. The informant triggered a signalling device, and police officers entered the house without a warrant and arrested the defendant. The court held that the entry by the officers was consensual, stating that when an individual invites an undercover agent into his house, the agent can summon other agents to assist in the arrest without violating the Fourth Amendment.

Similarly, in *United States v. Diaz*, 814 F.2d 454, 459 (7th Cir.1987), the defendant invited an undercover agent into his hotel room where the defendant displayed some drugs and they agreed to make a deal. The agent left, ostensibly to get the money,

and signalled other agents. The undercover agent knocked on the defendant's door, the defendant opened the door, and the agents entered the room and made the arrest, without a warrant or exigent circumstances. The court held that the undercover agent was in the room with consent, notwithstanding the deception, and that stepping out momentarily did not vitiate that consent, which extended to the other agents.

The post-*Payton* Ninth Circuit cases with facts closest to those presented by this case are *United States v. Johnson*, 626 F.2d 753 (9th Cir.1980), *aff'd on other grounds*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); and *United States v. Whitten*, 706 F.2d 1000 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). In *Johnson*, two agents without a warrant knocked on the defendant's door, identified themselves by fictitious names, and arrested the defendant as he stood in the open doorway of his home. The court held that the arrest violated the Fourth Amendment. 626 F.2d at 757. In *Whitten*, agents without a warrant arrested the defendant in the doorway of his hotel room after he answered their knocking. The agents then took the defendant into the room and searched it. The court held that the arrest did not violate the Fourth Amendment, but that the warrantless entry and search of the room, absent exigent circumstances, did violate the Fourth Amendment. 706 F.2d at 1015–17.

*Johnson* and *Whitten* fall into the line of cases following *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), which permitted the warrantless arrest of a defendant standing in the doorway of a house. The *Johnson* court distinguished *Santana* and its Ninth Circuit counterpart, *United States v. Botero*, 589 F.2d 430 (9th Cir.1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979), on the ground that Johnson opened the door in response to the false identification by the agents. 626 F.2d at 757. Here, Murrell opened the door in response to Turner's knock. The deception as to Turner's identity occurred as Murrell stood in the *open* doorway. Thus, the holding in

*Johnson* does not control the situation presented in this case.

This court is satisfied that the warrantless arrest of Murrell following the consensual entry into his apartment did not violate the Fourth Amendment, persuaded in part by the holdings of the Seventh Circuit in *Diaz* and *Paul.* The fact that the consent was procured by deception as to Turner's identity does not vitiate that consent. Turner, being lawfully within Murrell's apartment, could lawfully arrest Murrell there, and could lawfully summon other law enforcement agents to assist in the arrest.

### B. *Murrell's Statement*

Immediately upon his arrest, Murrell was advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and refused to consent to a search of the apartment. There is no indication that Murrell invoked any other rights in response to the *Miranda* warnings. If he had invoked his right to remain silent, the admissibility of his later statement would depend on whether his right to "cut off questioning" was "scrupulously honored" by the agents. *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). If he had invoked his right to have counsel present, he would not have been subject to further interrogation, unless he himself initiated further communication, exchanges, or conversation with the agents. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981).

Agent Turner stated in his affidavit that while they were waiting in the apartment for the search warrant, Murrell initiated the communication in which he stated that he used the vehicle to pick up the package at the airport. Murrell also asked Turner what would happen if he showed them where the cocaine was. The totality of the circumstances supports the findings that Murrell initiated the conversation with Turner, that Turner scrupulously honored Murrell's right to cut off questioning, and that Murrell knowingly and intelligently waived his rights. *See Oregon v. Brad-*

*shaw,* 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983); *see also United States v. Most,* 789 F.2d 1411, 1416–17 (9th Cir.1986). Thus, even if Murrell had invoked his rights to remain silent and to have counsel present, his statement to Turner was lawfully obtained.

Thus, Murrell's statement could only be excluded based upon his arrest. If the arrest was illegal, the statement was obtained in violation of the Fourth Amendment. No intervening events broke the connection between the detention and the admission about using the vehicle. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). However, this court has determined that the arrest was lawfully made, therefore, the statement is admissible.

### C. *The Search*

Additionally, even if Murrell's arrest was illegal, the fruit of the search pursuant to the warrant—the cocaine—was not obtained in violation of Murrell's rights. In *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), agents with probable cause but without a warrant arrested one defendant in the lobby of an apartment building, took him to his apartment, and knocked on the door. When another defendant opened the door, the agents entered the apartment, arrested the four occupants, and "secured" the apartment for 18 to 20 hours while they obtained a search warrant. The Supreme Court held that the seizure of the contents of the apartment was not unreasonable and did not violate the Fourth Amendment. Because the search warrant was obtained using pre-entry information only, the evidence uncovered in the execution of the warrant was not tainted by the illegality of the arrests and was admissible. The lower court ruling that the arrests were illegal was not contested, and the Supreme Court expressly did not reach that issue. 468 U.S. at 803 n. 4, 104 S.Ct. at 3384 n. 4.

Here, the agents arrested Murrell and secured his apartment for almost five hours while waiting for a search warrant. Agent Logan's affidavit, which was used to

obtain the warrant, contained no information obtained as a consequence of Murrell's arrest or the protective sweep of the apartment. The cocaine was recovered in the execution of the search warrant. Therefore, even if Murrell's arrest was illegal, the search was not tainted by that illegality, and the fruit of the search is admissible.

III. *Admissibility of Evidence*

If this court held that Murrell's arrest was illegal, then Murrell's statement that the vehicle was used to transport the cocaine was obtained in violation of his Fourth Amendment rights. The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and the use of fruits of a past unlawful search or seizure works no new Fourth Amendment wrong. *United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3411–12, 82 L.Ed.2d 677 (1984). The wrong condemned by the Amendment is fully accomplished by the unlawful search or seizure itself, and the exclusionary rule is neither intended nor able to cure the invasion of the defendant's rights which he has already suffered. *Id.; Stone v. Powell,* 428 U.S. 465, 540, 96 S.Ct. 3037, 3074, 49 L.Ed.2d 1067 (1976) (WHITE, J., dissenting).

█ The rule thus operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved. *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). Accordingly, as with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. *Leon,* 468 U.S. at 908, 104 S.Ct. at 3412–13; *Calandra,* 414 U.S. at 348, 94 S.Ct. at 620.

The exclusionary rule renders evidence obtained in violation of the Fourth Amendment inadmissible in the prosecution's case in chief in the criminal context. *Olmstead v. United States,* 277 U.S. 438, 462, 48 S.Ct. 564, 567, 72 L.Ed. 944 (1928). Generally, evidence derived from a Fourth Amendment violation is also inadmissible in a civil forfeiture proceeding. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 702, 85 S.Ct. 1246, 1251–52, 14 L.Ed.2d 170 (1965); *United States v. One 1977 Mercedes Benz,* 708 F.2d 444, 448 (9th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984). The rationale for this application of the exclusionary rule is that,

> [A] forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law.... It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible.

*Plymouth Sedan,* 380 U.S. at 700–01, 85 S.Ct. at 1250–51.

However, illegally obtained evidence is not inadmissible for all purposes. In a criminal case, evidence obtained in an illegal search, while inadmissible in the Government's case in chief, is admissible to impeach the defendant's statements. *United States v. Havens,* 446 U.S. 620, 624, 628, 100 S.Ct. 1912, 1915, 1917, 64 L.Ed.2d 559 (1980); *Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954). As the Supreme Court stated in *Walder,*

> It is one thing to say that the Government cannot make affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths.

Similarly, illegally obtained evidence is admissible in a civil forfeiture proceeding to impeach statements made by a claimant on cross-examination. *United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1427–28 (11th Cir.1983).

A balancing approach has evolved in various contexts in determining whether the exclusionary rule should apply. *See Calandra*, 414 U.S. at 349, 94 S.Ct. at 620–21. If the incremental deterrent effect which might be achieved by extending the rule to a particular proceeding is uncertain at best, or if the likelihood of deterring police misconduct through a particular extension of the rule is insufficient to outweigh its substantial social costs, then the use of the rule in that situation is unwarranted. *Leon*, 468 U.S. at 909, 104 S.Ct. at 3413.

▮ No published opinion has dealt with the admissibility of evidence obtained in violation of the Fourth Amendment for purposes of issuing a certificate of reasonable cause under 28 U.S.C. § 2465. Faced with an issue of first impression, this court will consider all of the information possessed by the agents here when they seized the vehicle, even if some of that information was obtained in violation of the Fourth Amendment.

Issuing a certificate of reasonable cause does not deprive Murrell of his property, but prevents him from recovering costs or bringing a successful civil suit for damages. Thus, issuing the certificate is not "quasi-criminal in character" and the rationale of *Plymouth Sedan* does not apply. Additionally, as in admitting illegally seized evidence to impeach, admitting such evidence here would prevent Murrell from using the illegal method by which the evidence was obtained as a weapon to his own advantage.

Moreover, such a result would be consistent with the overall scheme of civil forfeiture. To obtain a judgment of forfeiture, the Government's burden is to show reasonable grounds that the property was related to an illegal drug transaction, supported by less than prima facie proof but by more than mere suspicion. The burden then shifts to the claimant to show by a preponderance of the evidence that the property was not involved in a violation of the narcotics laws. *United States v. $5,644,540 in U.S. Currency*, 799 F.2d 1357, 1362 (9th Cir.1986). Thus, a claimant who in reality had violated the law but could not be convicted, could very well lose his property. The civil forfeiture system treats this claimant differently from a claimant who in reality was innocent, although the criminal system treats them identically.

A claimant who in reality was innocent would prevail in a civil forfeiture proceeding. If the Government could sustain its initial burden because of suspicious, though wholly innocent, circumstances, then a certificate of reasonable cause should issue. The innocent claimant, having sustained his burden of proof by a preponderance of the evidence, would have to be content with the return of his property. If the Government could not sustain its initial burden, the innocent claimant could recover costs and obtain civil damages in addition to the return of his property.

The claimant who in reality had violated the law could prevail on the merits in a civil forfeiture proceeding if the Government, in the absence of evidence determined by the court to have been seized illegally, could not sustain its initial burden. However, if illegally seized evidence is admissible for purposes of issuing a certificate of reasonable cause, the guilty claimant would not be entitled to costs and civil damages in addition to the return of his property. Affording different treatment to the guilty claimant at this stage of a civil forfeiture proceeding is consistent with the different treatment afforded him at the stage of forfeiting the property.

Finally, the additional deterrent effect from the application of the exclusionary rule here would be incremental at best. Police already operate under the deterrence that evidence seized in violation of the Fourth Amendment will be excluded in the criminal prosecution, jeopardizing a conviction. Additionally, the police officers already may face civil liability for the underlying violation of the individual's rights. Furthermore, that evidence already will be excluded in any civil forfeiture proceeding, possibly precluding forfeiture of property seized by the officers as related to illegal drug transactions. Police officers are aware of these potential consequences ev-

ery time they make an arrest or conduct a search.

What additional deterrence will be gained by application of the exclusionary rule to this situation? It will raise the additional possibilities in the minds of the officers that the government might have to pay some costs, and that the officers themselves might face additional civil liability, if some information they may discover as a result of the arrest or search they contemplate conducting, leads them later to seize forfeitable property. These additional possible consequences are so tenuous and so minor, relative to the present direct consequences of an illegal search or seizure, that their additional deterrent value is nil.

Moreover, it makes sense to consider all of the information the police acted upon in seizing the property in determining whether costs and civil liability should be premised upon those actions. It is not rational to require law enforcement officers to engage in a process of separating the information in their possession into two categories—information derived from a constitutional violation and information not derived from a constitutional violation—when determining whether they have probable cause to seize forfeitable property, and to do so correctly at the peril of civil liability.

Here, at the time they seized the vehicle, the agents knew that someone had shipped cocaine to Murrell, that Murrell had the cocaine in his possession, and that Murrell had admitted to transporting the cocaine in the vehicle. They had reasonable cause to believe the vehicle was used to transport illegal drugs, and subject to forfeiture.

IV. *Reasonable Cause Without the Confession*

■ If this court had determined that the exclusionary rule should apply in this situation, the United States' position that the agents had reasonable cause becomes tenuous. There is no substantial difference in the meanings of "reasonable cause" under 28 U.S.C. § 2465, and of "probable cause." *Stacey v. Emery,* 97 U.S. (7 Otto) 642, 646, 24 L.Ed. 1035 (1878).

The government can show probable cause that a seized item is subject to forfei-

ture on a "reasonable ground for belief" that the seized item is traceable to an illegal drug transaction. This belief must be more than "mere suspicion," but can be created by less than "prima facie proof." *United States v. 1982 Yukon Delta Houseboat,* 774 F.2d 1432, 1434 (9th Cir.1985); *United States v. $93,685.61 in U.S. Currency,* 730 F.2d 571, 572 (9th Cir.1984), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). Circumstantial evidence is sufficient to show probable cause. *1982 Houseboat,* 774 F.2d at 1434. Additionally, probable cause may be established by otherwise inadmissible hearsay. *Id.; United States v. One 56–Foot Yacht Named the Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983).

If the confession is excluded, the agents possessed the following information:

(1) Cocaine was shipped to Murrell on NWOA;

(2) On May 11, 1986, someone calling himself Murrell drove the vehicle to the airport to pick up the package, but did not receive the package then;

(3) On May 12, 1986, someone calling himself Murrell telephoned NWOA and said he was coming to pick up the package;

(4) On May 12, 1986, at 10:30 a.m. Murrell picked up the package at the airport;

(5) No one saw Murrell leave the airport;

(6) The agents drove immediately to Murrell's address in Waikiki. The vehicle was not in the parking lot and a phone call to Murrell's apartment got a recording;

(7) At 11:35 a.m., Murrell answered Turner's knock on his apartment door;

(8) When Murrell handed Turner the package, the cocaine was no longer inside;

(9) The cocaine was found in Murrell's bedroom at 4:35 p.m. and Murrell was formally placed under arrest, having been continuously in custody since shortly after 11:35 a.m.; and

(10) The vehicle was seized from the parking lot of Murrell's building on May 12, 1986, by the same agent who had placed Murrell under arrest.

These facts are sufficient to establish a reasonable belief that Murrell used the ve-

hicle to transport the cocaine from the airport to his apartment on May 12, 1986. The agents knew Murrell drove the vehicle to the airport in an attempt to pick up the cocaine on May 11, 1986. They knew he picked the cocaine up at the airport in person the following day. They drove immediately to his condominium, and when they arrived neither Murrell nor the vehicle was present. A few minutes later, they found Murrell in his apartment. They kept Murrell in continuous custody until they found the cocaine and placed him under arrest. After Murrell was arrested, they seized the car from the condominium's parking lot.

The obvious conclusions are that Murrell drove the vehicle to the airport to pick up the cocaine, the agents initially arrived at the condominium and made the telephone call before Murrell had returned, Murrell parked the vehicle in the parking lot and returned to his apartment before agent Turner knocked on the door, and the vehicle remained in the lot until the agents formally arrested Murrell and seized the vehicle. The facts do not exclude all other possibilities, however, they establish probable cause for the belief that Murrell transported the cocaine in the vehicle.

THEREFORE, the motion of the United States is hereby GRANTED, and a certificate of reasonable cause shall issue.

SO ORDERED.