UNITED STATES of America, Plaintiff,

v.

**ALL THAT TRACT
(RIVERDALE), Defendant.**

UNITED STATES of America, Plaintiff,

v.

**ALL THAT TRACT (GILMER
COUNTY), Defendant.**

UNITED STATES of America, Plaintiff,

v.

**ALL THAT TRACT (GREENWOOD
HOTEL), Defendant.**

Nos. 1:86–CV–2494–RHH,
1:87–CV–2066–RHH and
1:88–CV–2495–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 14, 1988.

Amy D. Levin, Office of U.S. Atty., Atlanta, Ga., for plaintiff.

Bobby Lee Cook, Sr., Cook & Palmour, Summerville, Ga., Steven Howard Sadow, Maloy Sadow & Jenkins, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

The United States of America, plaintiff in the above-entitled *in rem* forfeiture action, moves this court to enter summary judgment of forfeiture against claimant Larry Rogers. Plaintiff has not moved for summary judgment of forfeiture as to the property of claimants Audrey Rogers, wife of Larry Rogers, or Fred Rogers, Jr., father of Larry Rogers.

**FACTS**

In August of 1986, the Drug Enforcement Administration ("DEA") and the Atlanta Bureau of Police Services initiated a joint investigation into a drug trafficking

enterprise believed to be operating out of the Greenwood Hotel at 2160 Stewart Avenue. Plaintiff contends that the results of this investigation revealed that Larry Rogers was running an illegal dilaudid distribution enterprise which between 1981 and 1986 was the largest dilaudid organization operating within the City of Atlanta.

On November 14, 1986, Larry Rogers was indicted by a federal grand jury along with eight other individuals in a 16–count indictment, charging him with violating 21 U.S.C. § 841(a)(1). Specifically, Larry Rogers was charged with engaging in a continuing criminal enterprise involving distribution of dilaudid. On March 23, 1987, Larry Rogers entered a plea of guilty to Count 2 of the indictment, and on August 5, 1987, was sentenced to serve a 25–year prison term.

On November 18, 1986, the defendant properties including the Greenwood Hotel, property located on State Route # 5 in Gilmer County and property located at 8412 Carlton Road in Riverdale, were seized for forfeiture pursuant to 21 U.S.C. §§ 881(a)(6) and (a)(7). The government bases its forfeiture of the Greenwood Hotel on evidence that this property was both purchased with drug proceeds and used to facilitate Rogers' dilaudid distribution activities. Frank Rose Affidavit # 1; Rose Dep. at 20–25. Forfeiture of the Riverdale property is sought under § 881(a)(6), based on evidence that this property was both purchased by Audrey and Larry Rogers in August of 1986 with proceeds derived from Rogers' alleged dilaudid distribution activities. Rose Affidavit # 2 at 18–20; Rose Dep. at 50–55. In addition, plaintiff contends that the contents of the Riverdale property, as well as $61,020.00 in cash and jewelry seized by U.S. Marshalls at the time of the execution of the seizure warrant on the property, derived from proceeds from Rogers' alleged drug dealings. Rose Dep. at 55–58, 68–70. Finally, forfeiture of the Gilmer County property is sought pursuant to § 881(a)(7), based on evidence that Larry Rogers used this property to conceal dilaudid pills and large sums of cash alleged derived from Rogers' drug activities, as well as the fact that Larry Rogers allegedly used the proceeds of these drug activities to build a home on this property. Rose Affidavit # 3 at 18–21; Rose Dep. at 28–30, 32–36, 40–43.

With respect to the Greenwood Hotel, plaintiff produced evidence that from 1981 through 1986, Larry Rogers operated a dilaudid distribution enterprise out of the Greenwood Hotel. As described by one witness, a typical narcotics transaction at the Greenwood Hotel usually occurred on the grounds of the hotel property or in one or more of the vacant hotel rooms. Rose Affidavit # 1 at 4. Several addicts would purportedly remain in the hotel rooms, share their syringes and, if necessary, assist each other with the injection of dilaudid. *Id.* Based on this evidence, coupled with Larry Rogers' guilty plea to engaging in a continuing criminal enterprise involving the sale of dilaudids during this period, the Government argues that there is sufficient probable cause to forfeit the Greenwood Hotel pursuant to § 881(a)(7) on the grounds that this property was used to facilitate Rogers' illegal drug distribution activities.

In addition, the Government contends that there is sufficient evidence to forfeit this property pursuant to § 881(a)(6) as proceeds from Rogers' illegal drug distribution. According to one witness, there were between 50 to 100 dilaudid addicts who were daily purchasers from Larry Rogers at the Greenwood Hotel. Rose Affidavit # 1 at 10–11. The Government estimates a daily "take" by Rogers of between $2,000 and $4,000 per day, or up to $1.4 million per year. Comparing these projected profits with the amount of legitimate income reported to the Internal Revenue Service, the Government argues that there is probable cause to believe that the subject assets purchased by Larry Rogers derived from profits from illegal drug distribution activities. Likewise, the Government contends that the Riverdale property was purchased with drug profits because of evidence of a $190,000.00 balance on the purchase price of this residence was paid in cash, consisting of bills described as being "moldy and damp." Rose Dep. at 50–51.

Also, the furniture contents of the Riverdale residence were shown to have been purchased in cash. *Id.* at 69–70. Similarly, the Government produced evidence that the circumstances of the recovery of the $61,020.00 in cash and jewelry indicated that these assets were tainted. *Id.*

Finally, with respect to the Gilmer County property, the Government seeks forfeiture based on evidence that Larry Rogers used this property to conceal dilaudid pills as well as large sums of cash derived from his alleged drug activities. Rose Affidavit # 3; Rose Dep. at 18–21. The Government also contends that Rogers used proceeds from his drug activities to build a home on this property. Rose Dep. at 32–36, 40–43.

Larry Rogers filed a claim to the defendant property in this action, alleging that this property is not forfeitable under §§ 881(a)(6) and/or (a)(7). Claimant produced evidence to the court specifically refuting each of the Government's contentions. Claimant produced evidence, in the form of testimony by his wife, that the Greenwood Hotel was not purchased with proceeds derived from the sale of narcotics, but rather, was conveyed by Lela Smith, a relative of Larry Rogers, to Larry and Audrey Rogers through a series of deeds between 1981 and 1983. Audrey Rogers testified that the approximately $292,000 of indebtedness resulting from the Rogers' purchase of the property was forgiven in the will of Lela Smith, who died in April 1986. Audrey Rogers Dep. at 29–45; 46, line 1.

Claimant also produced evidence that the Riverdale property was not purchased with proceeds derived from the sale of illegal narcotics, but with money given to the Rogers family by Lela Smith. Audrey Rogers Dep. at 84–86, 98–100; Larry Rogers Dep. 45–53. Likewise, Claimant produced evidence that the $61,020.00 in cash and jewelry seized from the Riverdale property were not derived from drug proceeds, but that the money belongs to Lela Smith's estate and the jewelry was purchased with money given to the Rogers family by Lela Smith. Affidavit of Audrey Rogers. Deposition testimony also showed that the contents of

the Riverdale property were not derived from drug proceeds, but were purchased with money given to the Rogers family by Lela Smith. Audrey Rogers Dep. at 94, 104–105; Larry Rogers Dep. at 57.

Claimant produced evidence that the Gilmer County property was not used to conceal dilaudid pills and large sums of money derived from the sale of illegal narcotics. Larry Rogers Dep. at 74–75; 84. Claimant also produced evidence that he did not use drug proceeds to build a house on the Gilmer property, and the house being built on the property belongs to his father, Fred Rogers, Jr. Audrey Rogers Dep. at 132–134; Larry Rogers Dep. at 64–66.

Claimant produced evidence that the $10,000.00 downpayment given to Lela Smith in 1981 by Larry Rogers and Audrey Rogers for the Greenwood Hotel property did not come from the sale of illegal narcotics, but from insurance proceeds. Audrey Rogers Dep. at 36–37; Larry Rogers Dep. at 28–29.

Both Larry and Audrey Rogers denied Audrey's involvement in the possession, distribution, or sale of illegal narcotics. Audrey Rogers Dep. at 109, 150–153; Larry Rogers Dep. at 75–76, 81–88.

At his deposition held October 15, 1987, Larry Rogers invoked the Fifth Amendment and refused to answer several questions posed by plaintiff's counsel including: Have you ever sold dilaudids? When did you first become involved in the illegal sale of narcotics? How much proceeds have you derived from your drug transactions? How much proceeds have you derived specifically from your dilaudid sales? Were you involved in the sale of dilaudids at the Greenwood Hotel? Larry Rogers Dep. at 7–8, 73.

Larry Rogers also invoked the Fifth Amendment and refused to answer questions concerning income which was derived from the operation to the Greenwood Hotel, various alleged illegal activities which took place at the Greenwood Hotel, and whether he had ever concealed dilaudids on the Greenwood premises. Larry Rogers Dep. at 9, 12, 74, 77–79. He also refused to testify as to whether a $10,000.00 downpay-

ment made by Audrey and Larry Rogers for the purchase of the Greenwood Hotel property came from the sale of illegal narcotics. *Id.* at 28–30.

## DISCUSSION

According to 21 U.S.C. § 881(a)(6), all assets which are proceeds traceable to an illegal exchange for a controlled substance are subject to forfeiture. Under § 881(a)(7), all real property used to facilitate a narcotics offense is subject to forfeiture. Both of these statutes have been recognized as indicating Congress' clear intent to mandate the widespread use of various forfeiture proceedings as weapons in the war on drugs. *See e.g., United States v. 30.80 Acres,* 665 F.Supp. 422, 426 (M.D. N.C.1987).

 By virtue of 21 U.S.C. § 881(d), the burden of proof in these cases is controlled by 19 U.S.C. § 1615. Under section 1615, the government must first demonstrate probable cause to believe that a substantial connection exists between the properties sought to be forfeited and the exchange of the controlled substances. *United States v. $4,255,000,* 762 F.2d 895, 903 (11th Cir. 1985). The belief must be a reasonable one, supported by less than *prima facie* proof, but more than mere suspicion. *See United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1426 (11th Cir.1983); *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980). Circumstantial evidence and inferences from such evidence can suffice to support a finding of probable cause. *See United States v. $4, 255,000,* 762 F.2d at 904.

Once probable cause is shown, the burden of proof shifts to the claimant. *Id.* The claimant must then show by a preponderance of evidence that the property subject to forfeiture was not used or acquired in violation of the drug forfeiture statute. *Id.*

A claimant may defend against a forfeiture either by refuting the governments's showing of probable cause, or by coming forward with affirmative evidence tending to prove that the property was not derived from drug proceeds or used in furtherance of drug activities. *See United States v. $5,644,540.00 in United States Currency,* 799 F.2d 1357, 1362 (9th Cir. 1986); *United States v. One 56 Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983).

Here, the Government has made out a *prima facie* case. However, Claimant has successfully rebutted that case with evidence that the property was not derived from drug proceeds or used to facilitate drug activities. The credibility determination as to the evidence of the respective witnesses remains for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## CONCLUSION

The court DENIES Plaintiff United States of America's motion for summary judgment.