**UNITED STATES of America, Appellee,**

v.

**Scott P. BUTLER, Defendant, Appellant.**

**No. 84–1661.**

United States Court of Appeals, First Circuit.

Argued Feb. 4, 1985.

Decided May 24, 1985.

Rehearing and Rehearing En Banc Denied June 19, 1985.

**12**

John B. Reilly, Warwick, R.I., with whom Reilly & Flaherty, Warwick, R.I., was on brief, for defendant, appellant.

James E. O'Neil, Asst. U.S. Atty., Providence, R.I., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before BREYER, ALDRICH and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

Appellant Scott Butler was convicted of three narcotics violations (involving cocaine, marijuana, and LSD) and three firearms violations. *See* 21 U.S.C. §§ 841(a)(1), 844 (narcotics); 18 U.S.C.App. § 1202(a)(1) (firearms). On appeal, he presses several arguments. First, he claims that all of his convictions must be overturned because they rest on evidence that should have been suppressed because of violations of his Fourth Amendment rights. Second, he argues that he was impermissibly prejudiced by joinder of a narcotics conspiracy count (on which he was ultimately acquitted) to the substantive narcotics counts. He says that the conspiracy evidence adduced at trial had an impermissible "spillover" effect on the substantive narcotics counts. Third, he challenges the sufficiency of the government's narcotics evidence. Finally, he claims that the "special parole" term imposed on him unconstitutionally deprived him of due process. We do not agree with any of these claims; and we affirm his convictions in all respects.

I

On November 17, 1983 a confidential informant told Detective Richard Smith of the Warwick, Rhode Island Police Department that Scott Butler was in possession of about three pounds of cocaine that had been brought into the state on November 11 by commercial airline. The informant told Smith that Butler normally packaged the cocaine in small plastic bags that he would place inside larger brown paper bags before distribution. The informant also said that Butler's girlfriend, Nancy Cahoon, would be leaving Butler's house the following afternoon for the Midland Mall area of Warwick, to deliver some cocaine. Detective Smith was a member of the Rhode Island Drug Task Force, and knew that Butler had a prior record of narcotics violations. The next day Smith and other Task Force members conducted a surveillance of Butler's house. They observed Cahoon leave, as the informant had predicted. She drove a 1979 Ford that Smith

found was registered to Butler. Smith and others trailed Cahoon to the Midland Mall area. They approached her when she stopped at a traffic light. They observed a brown paper bag on the front seat of the car. They then took Cahoon into custody and seized the bag. Inside the brown paper bag there were two smaller plastic bags each containing about one ounce of what Smith preliminarily identified as cocaine.

Smith then contacted Special Drug Enforcement Agent Peggy Cafolla, who wrote an affidavit incorporating the facts we have just outlined. She presented the affidavit to a federal magistrate and asked for a warrant to search Butler's house. The magistrate issued the warrant that same afternoon; officers immediately searched Butler's house and its premises. The officers found two handguns, a shotgun, drug paraphernalia, and several packages of marijuana. The following day, the officers extended their search to property adjoining Butler's. They discovered a buried trash can which contained $88,000 in cash, approximately twelve ounces of virtually pure cocaine, small quantities of marijuana and LSD, and three safe deposit keys. The keys were later traced to two safe deposit boxes leased by Butler.

A federal grand jury issued a seven-count indictment charging Butler with: conspiracy to distribute narcotics, 21 U.S.C. § 846; illegal possession of, with intent to distribute, cocaine and marijuana, *id.* § 841(a)(1); illegal possession of LSD, *id.* § 844(a); and illegal possession by a felon of three firearms, 18 U.S.C.App. § 1202(a)(1). The district court severed the three weapons charges from the others and Butler was then tried on the four remaining narcotics charges. After the government had presented its case in chief, the district judge granted Butler's motion for acquittal on the conspiracy count based on the insufficiency of the conspiracy evidence. Butler presented no witnesses. The jury returned guilty verdicts on the three remaining (substantive) narcotics counts. Butler thereafter entered condi-

tional pleas of guilty on the three firearms counts, reserving his rights to press his Fourth Amendment argument on appeal, *see* Fed.R.Crim.P. 11(a)(2).

## II

■ a. Butler first argues that the search warrant was not based upon "probable cause," U.S. Const. amend. IV. We must sustain the magistrate's decision to issue the warrant unless it lacks a "substantial basis" under the "totality of circumstances," *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). That is to say, interpreting the affidavit in a "commonsense" fashion, *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965), to overturn the magistrate we should have to find that the magistrate was without a substantial basis for believing that

> there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 103 S.Ct. at 2332.

■ We cannot make such a finding here. The fact that Cahoon drove away from Butler's house to the Midland Mall with cocaine wrapped in plastic and paper bags—all just as the informant said would happen—makes the informant's tip highly reliable. *See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (finding probable cause where police corroborate details of informant tip). Consequently, 1) the informant's statement that Butler had brought three pounds of cocaine into the state a few days earlier; 2) Cahoon's driving away from Butler's house in Butler's car; and 3) Cahoon's possession of some amount of cocaine (less than three pounds) in the car, provide reasonable cause, under the circumstances, to believe that Butler had more cocaine in or near the house. Of course, even were we wrong about this we would still hold the evidence admissible. Where "evidence [is] sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause," it cannot be said that the

police officers, providing a truthful affidavit to a neutral magistrate, who then issued a warrant, were not objectively reasonable in believing that they had probable cause. *United States v. Leon*, — U.S. —, —, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984). Under these circumstances, *Leon* would hold suppression to be "inappropriate." *Id.*

■ b. Butler argues that his conviction rests upon other improperly admitted evidence, namely, the testimony of Officer Smith that he followed Cahoon from Butler's house and found cocaine in the car. Butler concedes that this testimony was properly admitted in respect to the conspiracy charge. But, he says, the judge dismissed the conspiracy charge for insufficient evidence. (Cahoon would not testify.) And, he adds, the testimony about Cahoon's actions amounts to inadmissible hearsay evidence in respect to the substantive cocaine possession charge.

It is obvious that Cahoon's activities are *relevant* to the possession charge, for she drove in Butler's car from Butler's house with the cocaine wrapped in packages ready for distribution. Nor is the testimony about those activities hearsay unless Cahoon's conduct amounts to "nonverbal conduct ... intended by [Cahoon] ... as an assertion." Fed.R.Evid. 801(a)(2). As we have previously pointed out in analogous circumstances, *see United States v. Hensel*, 699 F.2d 18, 31 (1st Cir.), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983), such conduct is likely "intended ... as an assertion" only if Cahoon, for example, was engaging in a kind of charade, deliberately seeking to mislead an observer. Here, as in *Hensel*, there is not a shred of evidence that such was the case. Thus, Cahoon's conduct must be taken as ordinary conduct, not an assertion, and Smith's testimony about it is not hearsay. *United States v. Hensel*, 699 F.2d at 31; Fed.R.Evid. 801, Advisory Committee note (a) (placing burden of proving assertive intent on party claiming such intention existed). We also note that the district judge specifically instructed the jury to disregard Smith's testimony (for reasons not here at issue). Since Butler's claim that he was entitled to a severance rests on the *pro-*

*spective* likelihood that the government would introduce this same evidence (of Cahoon's actions), our rejection of that claim follows *a fortiori. See United States v. Patterson,* 644 F.2d 890, 900 (1st Cir.1981) (severance under Fed.R.Crim.P. 14 generally addressed to district court discretion, and appropriate only where defendant makes strong showing of prejudice).

■ c. Butler next argues that the evidence is insufficient to support convictions on the substantive narcotics counts. On this question, we must "consider the evidence as a whole, taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom, to determine whether a rational trier of fact could have found guilt beyond a reasonable doubt." *United States v. Patterson,* 644 F.2d at 893. The evidence here is sufficient to meet that standard. There was evidence that police officers found drugs and drug paraphernalia (including scales, plastic bags and heat sealers) inside Butler's house. And one officer testified that, during the search, Butler stated that he would "show us something that was outside," took several officers outside the house, and motioned to a pile of brush where marijuana was then found. The following day, officers found an additional cache of drugs in the lot next to, and visible from, Butler's house. The drugs were in a garbage can in a green bag, which also contained a large sum of cash and keys to two safe deposit boxes leased by Butler. Taken as a whole, the evidence was sufficient to enable a jury reasonably to conclude that the drugs in question belonged to Butler and that he intended to distribute them.

■ d. Finally, Butler argues that the twelve-year "special parole" term which the judge added to his prison term violated his rights under the Constitution's due process clause, U.S. Const. amend. V. Butler notes that 21 U.S.C. § 841(b)(1)(A) allows a sentencing court to add to "[a]ny sentence imposing a term of imprisonment" for certain narcotics violations "a special parole term of at least six years in addition to such term of imprisonment" if the defendant has previously been convicted of sim-

ilar narcotics violations. Butler then adds that the district court in *United States v. Tebha,* 578 F.Supp. 1398 (N.D.Cal.1984) held this statutory provision *unconstitutional* for failure to give parolees notice of the consequences of violation of the terms of such special parole.

The parties in *Tebha,* however, evidently did not call to the district court's attention a different statutory provision, 21 U.S.C. § 841(c), which cures the defect that the court there noted. That provision says that if a convicted person violates the terms of his special parole, the original term of imprisonment may be "increased by the period of the special parole term" (here twelve years). And, "the new period of imprisonment shall not be diminished by the time" the person has already spent on special parole. *Id.* The statutory section concludes: "A person whose special parole term has been revoked may be required to serve all or part of the new term of imprisonment."

This provision makes clear that, if Butler violates special parole, the district court can require him to serve up to twelve additional years—the length of his special parole term. As other courts have noted in refusing to follow *Tebha,* this provision gives a judge

specific authority to determine, within statutory limits, the period of imprisonment for violation of the special parole.

*United States v. Davi,* 588 F.Supp. 91, 91 (E.D.N.Y.1984). *See also United States v. Lockley,* 590 F.Supp. 1215 (N.D.Ga.1984) (rejecting *Tebha*); *Ugland v. United States,* 596 F.Supp. 156 (D.N.J.1984) (same).

■ We agree with the courts in *Lockley, Davi,* and *Ugland;* and, unlike the *Tebha* court, we see no constitutional problem. Of course, the statute gives the judge broad powers to set the length of the special parole term initially, for it provides a minimum but no maximum. But, the statute puts defendants on notice that there is a broad range—from a minimum of six years, presumably up to life—within which to set a specific length for the parole term. As far as we are aware, Congress may

constitutionally create a broad sentencing range within which a judge may fix a particular sentence; Butler cites no authority suggesting that this legislative practice is unconstitutional. *See Ugland v. United States, supra* (upholding, against constitutional challenge, sentencing discretion under § 841(b)(1)(A) ); *United States v. Jones,* 540 F.2d 465, 468 (10th Cir.1976) (same), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *see generally Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (discussing traditional sentencing discretion of trial court); Kadish, "Legal Norm and Discretion in the Police and Sentencing Processes," 75 Harv.L.Rev. 904, 916 (1962) ("discretion of the judge ... in [sentencing] matters is virtually free of substantive control or guidance"); S. Saltzburg, *American Criminal Procedure* 1012–25 (1984) (collecting sentencing statutes and concluding that "[i]t should be clear that judges and juries can exercise a great deal of choice in sentencing those convicted of crime"); Partridge, Chaset & Eldridge, "The Sentencing Options of Federal District Judges," 84 F.R.D. 175 (1980).

For these reasons, the judgment of the district court is

*Affirmed.*