UNITED STATES of America,
Plaintiff, Appellee,

v.

PARCEL OF LAND AND RESIDENCE
AT 28 EMERY STREET, MERRIMAC,
MASSACHUSETTS, Defendant, Appel-
lee (Two Cases).

Appeal of Donald A.
McLAINE, Claimant.

Appeal of Catherine
McLAINE, Claimant.

Nos. 90–1090, 90–1172.

United States Court of Appeals,
First Circuit.

Heard June 4, 1990.

Decided Sept. 6, 1990.

Judith H. Mizner, Newburyport, Mass.,
with whom Ronald F. Spagnoli, Lynn,
Mass., was on brief, for appellants.

Wayne A. Budd, U.S. Atty., with whom
Jeffrey S. Robbins, Sp. Asst. U.S. Atty.,
Boston, Mass., was on brief, for plaintiff,
appellee, U.S.

**2**

Before SELYA and SOUTER *, Circuit Judges, and BOWNES, Senior Circuit Judge.

BOWNES, Senior Circuit Judge.

Donald A. McLaine and Catherine McLaine (the McLaines), the record owners of the property[1] at 28 Emery Street, appeal from the granting of summary judgment in favor of the United States by the district court resulting in the civil forfeiture of their home. The McLaines argue that evidence was seized from their home without probable cause in violation of the fourth amendment and should not have been considered in the district court proceeding. Moreover, they argue that even with the use of that evidence, the government has not met its burden of connecting the home sufficiently to drug transactions to forfeit the house. We agree that the government has not adduced sufficient proof to justify forfeiture on summary judgment.[2]

Summary judgment is appropriate when, in the absence in the record of a "genuine issue as to any material fact," "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also United States v. 5 Bell Rock Road, 896 F.2d 605, 611 (1st Cir.1990) ("[S]ummary judgment is precluded if there is a dispute over facts that might affect the outcome of the suit under the governing law[.]") (citations and quotations omitted). On a motion for summary judgment, we must examine, as we do here, the facts in the light most favorable to the appellants. Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

## I.

In June of 1987, the Beverly, Massachusetts, police department received information from a confidential informant that Donald McLaine was selling cocaine from his pickup truck at various places in Beverly. The informant also stated that s/he had been inside the McLaines' home at 28 Merrimac Street and had seen large quantities of cocaine and large quantities of money inside a safe. The informant was not of proven reliability. Over a year later, the police received a tip from another informant that Donald McLaine and a friend, Glenn Spear, were selling cocaine in Beverly. Shortly after that, a police detective observed Spear make (what the officer thinks) a drug order to a telephone number registered to Mrs. McLaine. That deal, according to the officer, was to be consummated the next morning in a parking lot. Neither Donald McLaine nor any other seller showed up and the sale never occurred.

Later that day a third informant, this one of confirmed reliability, told the police that a sale would take place the next day in the same parking lot. Based on this information, the Beverly police officers and the Drug Enforcement Agency obtained a warrant to search Donald McLaine and his truck. The Merrimac police searched the McLaines' residence pursuant to another warrant at the same time. In the search of the truck, police officers found extensive evidence of drug trafficking including cocaine, marijuana cigarettes, and what were believed to be drug sale notes. Based on this evidence, Donald McLaine was charged with trafficking in cocaine and the possession of marijuana. He pled guilty to charges of unlawful possession of marijuana, possession of a dangerous weapon (brass knuckles), and possession with intent to distribute of cocaine in connection with the search of the truck. He is now apparently serving his sentence.

The search of the house revealed less than 5 grams of a "white powder substance

---

\* Judge Souter heard oral argument in this matter, and participated in the semble, but did not participate in the drafting or the issueance of the panel's opinion. See 28 U.S.C. § 46(d).

1. The Economy Cooperative Bank of Merrimac, Massachusetts, also claimed an interest in the property. The government did not seek forfeiture of this interest, and the district court or-

dered forfeiture of the property to the government subject to the bank's interest.

2. Because we decide that summary judgment should not be granted for the government even with evidence seized from the house, we do not decide the issue of the validity of the warrant.

resembling cocaine,"[3] a plastic bag with "green vegetable matter," some marijuana cigarettes and cigarette butts, various drug paraphernalia, and numerous firearms. Based on this evidence, the government sought the forfeiture of the McLaines' home, claiming that the house was used for or facilitated cocaine trafficking. The government moved for summary judgment based on the affidavits of two police officers.[4] The district court granted that motion and this appeal followed.

## II.

One of the most powerful weapons in the government's arsenal in the continuing "war" on drugs is its ability to obtain the civil forfeiture of property that is used for or facilitates violations of the drug laws[5]. 21 U.S.C. § 881(a)(7).[6] To obtain a civil forfeiture of such property, the government need only show probable cause to believe that the property was used for a specified illegal purpose. *United States v. $250,000 in United States Currency*, 808 F.2d 895, 897 (1st Cir.1987) (adjudicating an action under section 881(a)(6)). Probable cause to forfeit requires only a "reasonable ground for belief of guilt[,] supported by less than prima facie proof but more than mere suspicion" that the property is subject to forfeiture. *Id.* Once the government makes this showing, the burden shifts to the claimant to prove by a preponderance of the evidence that the property was not used in violation of the statute or that it was so used without the owners' knowledge or consent. *United States v. 5 Bell Rock Road*, 896 F.2d 605, 606 (1st Cir.1990); *$250,000*, 808 F.2d at 897. After the burden has shifted the claimant has the burden of proof in a civil forfeiture case. 19 U.S.C. § 1615 (made applicable by 21 U.S.C. § 881(d)). In this case the claimants have only entered general denials to the facts (in addition to contesting the validity of the search warrant). That is insufficient to defeat a showing by the government of probable cause. So, if the government meets its burden, summary judgment should be granted.

This court and other circuit courts have consistently required that the government show some connection between the property forfeited and an illegal drug transaction in order to obtain forfeiture.[7] We have consistently required that there be a "substantial connection" between the

---

3. At no time was the substance positively identified as cocaine.

4. Although there were two affidavits, it must be noted that Sergeant Desmond's brief affidavit only attests to the truthfulness of Agent Sawyer's affidavit. The government also filed a supplemental statement setting forth Donald McLaine's plea of guilty in connection with the drugs found in the search of the truck. As far as we can tell from the record, there were no pleas or convictions stemming from the search of the house.

5. In this case the government alleges violations of 21 U.S.C. § 841 and 21 U.S.C. § 846.

    21 U.S.C. § 841(a) provides in relevant part that "it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."

    21 U.S.C. § 841(b) makes a violation of § 841(a) a crime punishable by more than one year's imprisonment.

    21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

6. 21 U.S.C. § 881(a)(7) provides in relevant part that:

    "The following shall be subject to forfeiture to the United States and no property right shall exist in them: ... (7) All real property, including any right, title and interest ... in the whole of any lot or tract of land, and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph to the extent of an interest of any owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

7. We have also adhered with stringency to the particularity requirement because of the drastic nature of these forfeiture proceedings. *See, e.g., United States v. Pole No. 3172, Hopkinton*, 852 F.2d 636, 638 (1st Cir.1988).

property forfeited and the drug activity. *See, e.g., United States v. One Parcel of Real Property,* 900 F.2d 470, 472 (1st Cir. 1990) ("substantial connection"); *United States v. One 1972 Chevrolet Corvette,* 625 F.2d 1026 (1st Cir.1980) (not finding substantial connection between car and drug transaction); *accord United States v. 3639–2nd St–N.E.,* 869 F.2d 1093 (8th Cir. 1989); *United States v. Santoro,* 866 F.2d 1538 (4th Cir.1989); *United States v. Various Parcels of Real Property,* 650 F.Supp. 62, 65 (N.D.Ind.1986) (government must present specific facts to show substantial connection; evidence of eight telephone calls to and from house not enough on summary judgment even when there was no claimant).

Other courts have tried to determine whether the property being forfeited was the "situs" or "nexus" of an illegal drug transaction. *3639–2nd St–N.E.,* 869 F.2d at 1096–97 (situs of sales means house had sufficient connection); *United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1427 (11th Cir.1983) (nexus); *United States v. $22,287 U.S. Currency,* 709 F.2d 442, 447 (6th Cir.1983) (government must establish a nexus between property and criminal activity). Finally, one circuit has specifically rejected the "substantial connection" test but required that the government demonstrate a nexus that "is more than incidental or fortuitous." *United States v. 916 Douglas Ave.,* 903 F.2d 490, 494 (7th Cir. 1990).[8]

**8.** In affirming the forfeiture of the property after a jury trial, the Seventh Circuit noted that in practice the differences between these tests is "blurry at best." *Id.* at 494.

**9.** This omission is significant because the government seems to have been in a position to determine whether this indeed was the case. The application for the search warrant, for example, states that, on the day that the drug sale was initially going to take place, the house at 28 Emery was under police surveillance.

**10.** The government relies heavily on *United States v. Butler,* 763 F.2d 11 (1st Cir.1985) for the proposition that there was more than enough evidence for probable cause in this situation. We are unpersuaded by *Butler* for a

## III.

■ The controlling issue is whether, consistent with the summary judgment standard, the government has presented enough evidence to connect McLaine's drug trafficking to the house, or to put it another way, whether the government, taking the record in the light most favorable to the nonmovants, has necessarily shown more than mere suspicion that the house facilitated the sale of drugs from McLaine's truck.

The problem with the government's proof is the lack of a solid evidentiary basis linking the house to the sale of drugs. Unlike a more typical forfeiture case, no direct connection has been established between drug trafficking charges stemming from the sales by McLaine from his truck and the McLaine home. For example, there is no evidence, by implication or allegation, that the McLaines sold, processed or produced the drugs at their home. *Cf. United States v. 1933 Commonwealth Ave.,* 913 F.2d 1, 2–3 (1st Cir.1990) (telephone calls and complaints about sale of drugs from house); *United States v. 40 Moon Hill Road,* 884 F.2d 41 (1st Cir.1989) (cultivation of 130 live marijuana plants on property). There is no evidence from which an inference must be drawn that the drugs in the truck were put there after being stored in the house. There is not even evidence that Donald McLaine drove directly from the house to the meeting place as the government asked at oral argument that we infer.[9] *Cf. United States v. Butler,* 763 F.2d 11 (1st Cir.1985).[10]

number of reasons. First, the factual connection to the house was much closer in *Butler.* The police observed Butler's friend leave the house. They pulled her over and found drugs. Then they applied for a warrant to search the house. Here, although the police had the opportunity to see McLaine leave the house (if that is what he did), they did not so state. Thus the key fact in *Butler,* the connection between the car and the house is missing here. Second, the totality of the circumstances about drugs in the house in *Butler* was much more compelling. There was no staleness problem. Moreover, the informant had more specific information about the amount of drugs that Butler was believed to have in the house. Finally, the government seems to confuse probable cause to forfeit and probable cause to seize. *See generally, United*

Most tellingly, the record contains no evidence that any of the substances found in the search were determined to be drugs, rather than suspected of being drugs. *Cf. United States v. 5 Bell Rock Road*, 896 F.2d 605, 607 (1st Cir.1990) (police lab report showing that "dried vegetation" found in search was marijuana). We do not understand why tests were not conducted or if they were, why the results were not introduced. Without such evidence, all that is before us is the government's suspicion that Donald McLaine stored and packaged the drugs that were found in his truck in the house.

The government's case on summary judgment is based on three things:

1. A confidential informer of untested reliability who at some unspecified time more than a year before the search of the house stated that s/he had seen cocaine and large amounts of cash in the house;

2. A telephone call to the McLaine house overheard by a detective in which it sounded to him as if a drug deal were being set up;

3. Various tools of the drug trade found in the search of the house.

The government brazenly contends, in asserting that the forfeiture should be upheld even if the evidence seized from the home is ruled inadmissable, that the first two are sufficient to forfeit the house. This is unsupportable. Without the tools of the trade, there is nothing but suspicion to connect the house to the sales.

While it is settled that hearsay may be considered by a court in evaluating probable cause to forfeit, there must be a substantial basis for crediting the hearsay. *United States v. One 1974 Porsche 911–S*, 682 F.2d 283, 286 (1st Cir.1982). The totality of the circumstances here does not provide enough evidence to credit the unnamed and unverified informant. Although some minor information s/he provided was corroborated, such as the color

and kind of truck that McLaine drove, more significant items that the informant claimed to have seen never materialized. For example, there is no evidence that the most obvious examples of drug trafficking that the informant claims to have seen in the house (drugs, large amounts of unexplained cash or a .357 pistol) were found in the house.[11] There is also no indication of the informant's basis for believing that whatever s/he saw in the house was actually cocaine. In addition, the informant's only visit to the house was at least a year prior to the search raising a question of the staleness of the information. *Cf. United States v. Pappas*, 613 F.2d 324 (1st Cir. 1979) (seizures under probable cause exception of forfeiture statute limited by remoteness in time of information); *United States v. 6 Patricia Dr.*, 705 F.Supp. 710, 715–19 (D.R.I.1989) (analyzing first circuit probable cause standard); *United States v. 1979 Mercury Cougar*, 545 F.Supp. 1087 (D.Colo.1982) (following *Pappas*). Finally, in the context of these other credibility problems, the fact that initially another address (28 Merrimac Street) was given by the informant as the address where the drugs and cash, while possibly just an innocent mistake, becomes troubling. Taken together these various items make the informant's information insufficiently reliable to justify summary judgment.

The addition of the one overheard telephone call, even if it was exactly what the police officer thought it was, adds little to the government's case. We think one phone call overheard by a police officer that never resulted in a sale is insufficient on summary judgment for forfeiture. *See, e.g., Various Parcels of Real Property*, 650 F.Supp. 62, 65 (N.D.Ind.1986). The only case that might be called close to the facts of this case is easily distinguishable. In *916 Douglas Ave.*, the Seventh Circuit upheld the forfeiture of a house based on telephone calls that arranged drug transactions. But there are a number of impor-

---

*States v. 6 Patricia Dr.*, 705 F.Supp. 710, 715–19 (D.R.I.1989).

**11.** We do not think that the collection of Indian head nickels and various coin books that were found in the search can justifiably be the cash that was referred to, nor do we think them valuable enough to indicate substantial drug sales.

**6**

tant distinctions between that case and this one. In that case, the property was forfeited after a full trial in which a judge was able to evaluate the credibility of the witness. Moreover, the drug sale was a direct result of the phone calls, there was more than one phone call and the defendant had told the undercover police officer (the caller) to call the claimant at home to set up the deal. *Id.* at 491–92.

We assume, without deciding, that the evidence seized from the house can be considered in this proceeding. It is undisputed that tools of the drug trade were seized in the house.[12] The question is whether tools of the trade, without solid evidence of trade itself, such as drugs in the house or sales emanating from the house, are sufficient to allow a home to be forfeited summarily. We believe that, on summary judgment, where the district judge is forbidden from "superimpos[ing] his own ideas of probability and likelihood ... upon the carapace of the cold record," *Greenburg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987), such evidence does not in and of itself create a necessary connection between the property and drug trafficking substantial enough to forfeit the house.

We therefore reverse the granting of summary judgment and remand for a trial on the merits.

---

12. Appellants claim that the firearms were a collection, not weapons.