UNITED STATES of America, Plaintiff,

v.

FORFEITURE, STOP SIX CENTER, LO-CATED AT 3340 STALLCUP, FORT WORTH, TEXAS, et al., Respondent In rem.

Civ. A. No. 4–91–090–K.

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 31, 1991.

Diane M. Kozub, William J. Andersen, Asst. U.S. Attys., Fort Worth, Tex., for plaintiff.

Wayne F. Salvant, Fort Worth, Tex., for respondent in rem.

## MEMORANDUM OPINION AND ORDER

BELEW, District Judge.

Plaintiff United States brings this action under 21 U.S.C. § 881 against the Respondent Stop Six Center, located at 3340 Stallcup, Fort Worth, Texas.[1] Plaintiff alleges that the property is a proceed of illegal drug trafficking or was used to facilitate illegal drug trafficking. Cellie Horton and her brother, Travis Glenn, claim an interest in the Stop Six Center and seek to defend this forfeiture.

The instant matter is before the Court on Plaintiff's Motion for Summary Judgment. Plaintiff's contentions are that Claimant Horton does not have standing to defend this forfeiture, there is probable cause to forfeit the property, and Claimants are not innocent owners.

After careful consideration of the record, motion, briefs, summary judgment evidence and applicable law, the Court determines that Claimant Horton has standing, there is probable cause to forfeit the Stop Six property, and Claimant Glenn is not an innocent owner. The Court also concludes that a genuine issue remains concerning the innocent ownership of Claimant Horton. Therefore, Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

## STANDING

■ Standing is a threshold issue that Claimant Horton must satisfy prior to defending this forfeiture.[2] Her burden is simply to show a "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement and 'prudential considerations defining and limiting the role of the court.'" *United States v. $321,470.00, United States Currency*, 874 F.2d 298, 302 (5th Cir.1989) (quoting *United States v. One 18th Century Columbian Monstrance*, 797 F.2d 1370, 1373 (5th Cir.1986), *cert. denied*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1988)).

---

1. The seized property included a restaurant, shopping center, and parking lot.

2. Plaintiff agrees that Claimant Glenn's possessory interest in the Stop Six property satisfies the standing requirement.

"At this preliminary juncture, however, claimant need not prove the full merits of her underlying claims." *United States v. One Parcel of Real Property*, 942 F.2d 74, 78 (1st Cir.1991).

■ Plaintiff argues that Claimant Horton holds "bare legal title" to the Stop Six property and acts as a mere strawperson without standing to defend this forfeiture. Courts have held that a claimant with bare legal title lacks the requisite standing. *See United States v. Real Property at 5000 Palmetto Drive*, 928 F.2d 373, 375 (11th Cir.1991) ("possession of bare legal title by one who does not exercise dominion and control over the property is insufficient to establish standing to challenge a forfeiture"); *United States v. One Parcel of Land, Known as Lot 111-B*, 902 F.2d 1443, 1444 (9th Cir.1990) ("possession of mere legal title by one who does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture"). The issue here is whether the summary judgment evidence before the Court demonstrates sufficient dominion and control over the property by Claimant. Possession, title and financial stake are relevant indicators of dominion and control. In evaluating these factors the Court determines whether Horton would actually suffer from a loss of the property.

■ On June 11, 1979, Claimant Horton paid $10,000.00 for an undeveloped lot in Fort Worth, Texas. The money for the cash purchase came from money she saved from her salary as a teacher in the Fort Worth Independent School District. Her intent at the time of the purchase was to hold the lot as an investment and eventually develop it as a business that she could operate after her retirement. During the time that Claimant was employed by the school district, she allowed her brother, Claimant Travis Glenn, to develop and operate the Stop Six Center on the lot. On June 5, 1981, Claimant opened a joint checking account with her brother for the purpose of writing checks to pay for construction costs on the property. On June 17, 1981, Claimant Horton obtained a construction loan for $20,000.00 which she deposited in the checking account and used to build the Stop Six Center Restaurant. Claimant repaid the loan on a monthly basis until August 1983 when she paid off the balance of the note. From June 11, 1979, until the seizure on July 26, 1988, Claimant Horton paid property taxes to the City of Fort Worth and Fort Worth Independent School District.

Plaintiff alleges that these facts prove Claimant Horton, as record owner, fulfills the role of a "strawman" set up to conceal the illegal narcotics trafficking of someone else. In support of this conclusion Plaintiff stresses the following facts: (1) Horton paid cash for the purchase price of the lot ($10,000.00), the balance of the construction loan ($15,391.87), and on two occasions property taxes ($3,083.81 and $3,850.58) (according to Plaintiff, these cash payments, allegedly made without supporting documentation, alone indicate narcotics trafficking); (2) Horton's complete lack of supervision regarding the daily operation of the business and absence of rent payments by her brother; and (3) insurance on the Stop Six building was in the name of "Stop Six c/o Travis Glenn." According to Plaintiff, the sole evidence of Claimant Horton's ownership are the title documents.

Although the Court agrees that Claimant's lack of evidence documenting the source of her funds hampers her ability to prove innocent ownership at trial, it disagrees that the absence of such evidence precludes standing. This is not a case where the claimant is without legitimate employment. Nor is it a case where the government has offered conclusive evidence establishing Horton's status as a strawperson for narcotics traffickers. Plaintiff asks the Court to infer a drug trafficking source for the initial purchase, loan and tax payments simply because she was a teacher who used cash. That argument improperly accelerates Claimant's burden of proving innocent ownership. It may be relevant at trial, but it is certainly not dispositive of the standing issue.

In support of its argument Plaintiff cites *United States v. Premises Known as 526 Liscum Drive* as authority for denying Horton's standing. 866 F.2d 213 (6th Cir. 1989). In that case the Sixth Circuit held that the claimant possessed bare legal title to the seized real estate. *Id.* at 217. After learning that the residents of 526 Liscum Drive were a married couple suspected of drug trafficking, the FBI obtained a search warrant and conducted a search of the premises. *Id.* at 215. The search revealed narcotics, paraphernalia, and currency used in previous undercover purchases. *Id.* at 215. Further investigation by the FBI concerning ownership of the property revealed the following:

> Theresa Booker [defendants' daughter] filed a claim for the property, asserting that she was its sole owner ... [the] property is titled in the name of Theresa Booker ... [and] Charles Hall, an individual who had previously purchased cocaine at 526 Liscum ... stated that Gene Booker [one of the defendants and claimant's father] told Hall that he (Gene Booker) had purchased the Liscum premises for $40,000 and had put the property in someone else's name.

*Id.*

There was also evidence from defendant Gene Booker's brother that established claimant's residence in a different state and lack of contact with the property. *526 Liscum Drive*, 866 F.2d at 215. "The former owner indicated that he showed the house to Gene and Jimmie Booker and that the Bookers were present at the closing, while Theresa Booker was not present." *Id.* In addition, Gene Booker's aunt told investigators that "Gene Booker bought the house with his own money and placed it in his daughter's name." *Id.* at 216. *526 Liscum Drive* presents a persuasive case of bare legal title compelling a denial of standing. However, it is obvious that the same persuasive evidence is not present in the case at bar.

Absent evidence of the kind presented in *526 Liscum Drive*, the proper analysis of the standing issue can be found in *Real Property at 5000 Palmetto Drive*. 928 F.2d 373. The Eleventh Circuit acknowledged that claimants cannot establish standing with bare legal title, but held that the district court's findings of fact at the forfeiture trial established the requisite standing. *Id.* at 375. As the following quote indicates, *Real Property at 5000 Palmetto Drive* is factually similar to the case at bar:

> Lansky [claimant] testified that she and her son entered an agreement whereby she allowed him to live on the property rent free until she retired. This arrangement would continue so long as he paid the bills and did not do anything illegal on the premises. Lansky visited the premises on a regular basis to clean the residence.... As to Lansky's ownership of the property, Lansky executed the contract for purchase of the house on December 11, 1978. A warranty deed was issued in her name. Although it is suspicious that the property was purchased with $50,000 cash, testimony was presented by various witnesses that the money came from a lawsuit settlement involving Lansky's daughter, Charlene Hicks. While we share the government's concern that no documentary evidence reflected this cash source, testimony was presented by family and non-family members that Charlene Hicks recovered a cash settlement from a motorcycle accident. Obviously, the district court is in the better position to consider the credibility of these witnesses. And, having noted that "[f]ailure to document the origin of the money used to purchase the Defendant property can result in the claimant's failure to demonstrate standing," ... the [district] court concluded that Lansky had standing to contest the forfeiture.

928 F.2d at 375.

Claimant Horton explained that savings from her salary as a school teacher were used to purchase the unimproved lot. She also said that she gave her brother full use of the property to develop and operate a business until her retirement. She stated that the initial profit from the business was so meager that she allowed her brother to use the property without paying rent. The

mere fact that she cannot document the source of the initial purchase price, loan and tax payments, does not preclude her standing to defend this forfeiture. Horton held title to the property, temporarily delegated management to her brother and alleged a financial stake in the outcome of this forfeiture. The Court holds that the evidence does not preclude her standing at this time.

## PROBABLE CAUSE

■ Having determined that Claimants possess standing to defend this forfeiture, the Court must next decide whether there is probable cause to forfeit the Stop Six property. With regard to § 881(a)(6) forfeitures, the government has the initial burden of proof requiring probable cause for the belief that a "substantial connection" exists between the Respondent property and illegal narcotics transactions. *See United States v. One 1987 Mercedes 560 SEL*, 919 F.2d 327, 331 (5th Cir.1990) (citing *United States v. $4,255,625.39*, 762 F.2d 895, 903 (11th Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986)); *United States v. One 1980 Rolls Royce*, 905 F.2d 89, 90 (5th Cir.1990); *United States v. $64,000.00 in United States Currency*, 722 F.2d 239, 244 (5th Cir.1984); 21 U.S.C.S. § 881(a)(6) (1991). Probable cause to believe the property is related to "some" illegal activity does not permit its forfeiture. *United States v. $38,600.00 in United States Currency*, 784 F.2d 694, 698–99 (5th Cir.1986). This circuit defines probable cause to forfeit as "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980).

■ Plaintiff also prosecutes this forfeiture under § 881(a)(7), the subparagraph that adds real estate to § 881's list of forfeitable property. 21 U.S.C.S. § 881(a)(7) (1991). Plaintiff points to the absence of Fifth Circuit case law concerning the

government's burden in § 881(a)(7) forfeitures and argues that it need not establish a substantial connection. In support of this conclusion it cites an unpublished opinion from this district. *See United States v. 14.89 Acres of Land*, No. 4–86–713–E (N.D.Tex. Jan. 9, 1989). For the reasons that follow, this Court declines to adopt the government's interpretation of its burden in § 881(a)(7) forfeitures.

In *14.89 Acres of Land* the district court held that § 881(a)(7) deserved the same analysis as the Fifth Circuit applied to § 881(a)(4) forfeitures.[3] To understand how the court came to this conclusion we must look to Fifth Circuit cases analyzing the government's burden under § 881(a)(4). In *United States v. 1964 Beechcraft Baron Aircraft*, the Fifth Circuit distinguished § 881(a)(4) from 881(a)(6) by looking to legislative history.

> That amendment's legislative history [§ 881(a)(6)] used the "substantial connection" language which the court correctly relied upon in ... [a § 881(a)(6) forfeiture case]. However, that amendment's legislative history makes no mention of using the same test for other forfeiture actions and the legislative history of § 881 is devoid of any mention of a "substantial connection" test.

691 F.2d 725, 727 (5th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983). After it analyzed the legislative history in this manner, the court concluded that use of property "in any manner," even if it was an immaterial or tenuous use, "to facilitate the sale or transportation of a controlled substance raw material is the proper test." *Id.* at 728.

A year later, in another § 881(a)(4) case, the Fifth Circuit again rejected the argument that a "substantial connection must exist between the use of the ... [property] and the illegal transaction." *United States v. One 1978 Mercedes Benz*, 711 F.2d 1297, 1303–1304 (5th Cir.1983). Rather, "a section 881 forfeiture is proper if the vehicle in question 'was used in any manner to

---

**3.** 21 U.S.C.S. § 881(a)(4) (1991) (provision adding conveyances to § 881's list of forfeitable property).

facilitate the sale or transportation of a controlled substance.'" *Id.* at 1304 (citing *1964 Beechcraft Baron Aircraft*, 691 F.2d at 727). *1964 Beechcraft Baron Aircraft* and *One 1978 Mercedes Benz* are the sole Fifth Circuit authority for rejecting the substantial connection test in § 881(a)(4) forfeitures. *1964 Beechcraft Baron Aircraft* is also the lone authority for the district court's analysis of § 881(a)(7) in *14.89 Acres of Land.* The problem is that each of these opinions suffer from the Fifth Circuit's flawed analysis of legislative history in *1964 Beechcraft Baron Aircraft.*

*1964 Beechcraft Baron Aircraft* is flawed for three reasons: (1) it cites the legislative history out of context; (2) it incorrectly states that the § 881(a)(6) amendment "makes no mention of using the same test for other forfeiture actions;" and (3) it incorrectly states that the legislative history of § 881(a)(6) is irrelevant to interpretation of § 881 as a whole. The legislative history of the § 881(a)(6) amendment states in pertinent part as follows:

> *Due to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent. Specifically,* the Senate amendment [adding (a)(6)] provides for the forfeiture of property exchanged or intended to be exchanged in an illegal drug transaction. In addition it provides for forfeiture of property which is the proceeds of an illegal drug transaction only if there is a traceable connection [sic] such property and the illegal exchange of controlled substances. Thus if such proceeds were, for example, commingled with other assets,

involved in intervening legitimate transactions, or otherwise changed in form: they would still be subject to forfeiture, but only to the extent that it could be shown that a traceable connection to an illegal transaction in controlled substances existed. Similarly, any moneys, negotiable instruments, or securities that were used or intended to be used to facilitate any violation of the Controlled Substances Act would be forfeitable only if they had some *substantial connection* to, or were ·instrumental in, the commission of the underlying criminal activity which the statute seeks to prevent.

Joint Explanatory Statement of Titles II and III, 124 Cong.Rec. S17647 (October 7, 1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 9518, 9522 (emphasis added).

After reading the Explanatory Statement in context it is quite clear that the authors included a "substantial connection" statement pertaining to "forfeiture statutes" in general and then "specifically" delineated how that requirement interacted with the new subparagraph. The legislative history also states that the new provision "amends section 511 of the Controlled Substances Act (21 U.S.C. 1881 [sic] ) [21 U.S.C. § 881]." *Id.* at 9522. It defies logic and a plain reading of the above quote to say that the legislative history of the 1978 amendment makes no mention of a substantial connection test for other subparagraphs of the section or is somehow irrelevant to interpretation of § 881 as a whole. After carefully analyzing the relevant statutory material, the Court concludes that the government's burden is to prove a substantial connection in all § 881 forfeitures.[4] Because the Fifth Circuit has not addressed the issue, this Court will apply the

---

**4.** Several circuits agree that courts should apply the substantial connection test. *See United States v. Turner*, 933 F.2d 240, 243 (4th Cir. 1991); *United States v. Parcel of Land & Residence at 28 Emery Street*, 914 F.2d 1, 3–4 (1st Cir.1990); *United States v. One Parcel of Land, Known as Lot 111–B*, 902 F.2d 1443, 1445 (9th Cir.1990); *United States v. Premises Known as 3639–2nd Street*, 869 F.2d 1093, 1098 (8th Cir. 1989) (Arnold, J., concurring); *526 Liscum*

*Drive*, 866 F.2d at 216. Two other circuits have experimented with semantics and developed their own "test." *See United States v. Certain Real Property*, 954 F.2d 29, 33 (2d Cir.1992) (requiring a "nexus" that sufficiently connects drug activity with the property); *United States v. Certain Real Property & Premises Known as 38 Whalers Cove Drive*, 943 F.2d 721, 725 (7th Cir. 1991) (requiring a nexus that is more than incidental or fortuitous).

substantial connection test in § 881(a)(7) forfeitures.

 In applying the substantial connection test the issue is the "quality" of the relationship between the crime and the property, it must be substantial. In the instant case, Plaintiff documented drug activity at the Stop Six Center through an extensive investigation that included surveillance, undercover narcotics sales, numerous arrests and information from narcotics agents who used as many as five confidential informants. For example, the government listed the following drug-related activities:

a) On April 25, 1980, a Drug Enforcement Administration ("DEA") confidential informant ("CI") told DEA Special Agent Seary that Claimant Glenn (as well as members of the Maddox drug organization) sold large quantities of heroin from the Maddox Cafe.

b) On January 14, 1983, a second DEA CI drove to the Stop Six property with a DEA agent. While the agent remained in the car, the CI entered the restaurant and purchased cocaine and heroin from an individual who told the CI that the heroin Claimant Glenn had brought to the Stop Six property for sale was of good quality.

c) On January 20, 1983, the same CI drove to the Stop Six property with a DEA agent where the CI was observed by the DEA agent to enter the restaurant and talk with Claimant Glenn and then walk out of view. The CI then returned to the car with heroin and cocaine that he said he had purchased from an individual at the direction of Glenn after giving Glenn the money.

d) On August 29, 1983, a third DEA CI told two DEA agents that Butch's night club, which is part of the Stop Six property, was owned and operated by Glenn and was known as a hang out for heroin dealers. *Various CIs have referred to Claimant Glenn as "Butch."*

e) On October 25, 1983, a fourth CI was driven to the Stop Six property by a DEA agent and a DEA Task Force officer, where the CI purchased heroin and cocaine from an individual under the direction of Claimant Glenn.

f) On September 24, 1986, a Fort Worth Police Department officer, acting on information that heroin and cocaine were being sold at the Stop Six property, went there and the bartender asked her what she wanted. The officer replied, "½ gram of cocaine." The bartender then directed her to the bathroom where two other individuals sold her the cocaine. The Fort Worth Police Department Laboratory determined that the substance purchased was cocaine.

g) On September 25, 1986, the same Fort Worth officer went back to the Stop Six property and purchased another half gram of cocaine.

h) On April 21, 1987, a member of the Maddox drug organization told a DEA agent that Claimant Glenn ran the Stop Six Center and was one of Billy Ray Maddox's main lieutenants.

i) On May 5, 1987, an individual who was assaulted in the Stop Six parking lot, told police that she was assaulted by a Stop Six employee who spent much of his time near his pickup truck on the parking lot selling heroin and cocaine.

j) On November 4, 1987, an individual told a DEA agent that Billy Ray Maddox distributed heroin and cocaine through the restaurant on the Stop Six property. This same individual said that he had purchased heroin from Claimant Glenn on two occasions. He would go to the club on the Stop Six property, make a deal for heroin with Glenn, and Glenn would obtain the heroin from somewhere in the kitchen.

k) On November 6, 1987, Fort Worth officers, acting on complaints of narcotics trafficking, went to the restaurant on the Stop Six property. While inside the restaurant, the officers observed three individuals sitting at different tables without food as if they were lookouts. One of these individuals was in possession of a loaded pistol. While on the property officers observed an exchange, arrested the suspect and recovered a

clear plastic bag that contained cocaine base.

l) On March 18, 1988, another Fort Worth officer purchased cocaine in the hallway where the bathrooms were located. The individual who conducted the sale was later arrested and twelve additional dosage units of cocaine base were retrieved from the trash can inside the bathroom.

m) On May 9, 1988, a member of the Maddox drug organization, told a former DEA Task Force officer that Claimant Glenn owed Maddox thousands of dollars.

n) On July 12, 1988, DEA agents recorded a conversation between Billy Ray Maddox and another individual in which Maddox was heard to complain about the volume of business Butch was able to produce.

o) On July 24, 1988, Fort Worth officers went to the restaurant on the Stop Six property in reference to numerous complaints that narcotics were sold at that location. The officers entered the restaurant and observed a cook give a hand signal to occupants that the police were there. The officers observed an individual run and throw something away. The officers arrested the individual and recovered one large plastic bag containing sixteen smaller bags of cocaine base.

p) On July 26, 1988, Fort Worth police officers executed a search warrant at the Stop Six property and arrested several suspects in the parking lot. They recovered a total of sixty dosage units of cocaine base.

q) On November 4, 1988, a DEA agent interviewed a member of the Maddox drug organization. This person formerly managed the narcotics trafficking activity at another Maddox nightclub and advised the agent that Butch's (the Stop Six Restaurant) was selling narcotics. He further advised that Butch operated the club and supervised the narcotics sales.

r) Between August 1987 and July 1988, surveillance established Billy Ray Maddox's presence at the restaurant on the Stop Six property on numerous occasions.

Plaintiff's summary judgment evidence shows that Claimant Glenn, his employees, and others in the restaurant or on the parking lot, consistently participated in illegal narcotics transactions. Claimants ask the Court to disregard all of this evidence because it comes from the hearsay statements of confidential informants and law enforcement officers. Their request is without merit because it is well-settled that Plaintiff can use hearsay and circumstantial evidence to demonstrate its probable cause burden. *See One 1987 Mercedes 560 SEL*, 919 F.2d at 331.

Overwhelming evidence establishes a substantial connection between the Stop Six Center and trafficking in narcotics sufficient to establish probable cause. Evidence obtained from the DEA, Fort Worth Police Department, confidential informants, observed drug purchases, searches and arrests, plainly support a probable cause finding. The Court finds that there is more than mere suspicion that the Stop Six property was a haven for drug dealers from 1983 to 1988. *See United States v. Sonny Mitchell Center*, 934 F.2d 77, 77–78 (5th Cir.1991) (probable cause established by strip mall's use as a haven for drug dealers over a five year period). Although the evidence is insufficient at this time to establish the property's status as a proceed of narcotics trafficking, it is quite clear that the property, used as a situs for substantial drug-related activity, played an important facilitation role. Claimants' affidavits do not refute a finding of probable cause; instead, they simply assert the innocent owner defense.

## INNOCENT OWNER DEFENSE

▆ Plaintiff has shown sufficient probable cause to forfeit the Stop Six property pursuant to § 881(a)(7). Therefore, the burden shifts to Claimants to prove by a preponderance of the evidence, that they were innocent owners of the property. *See United States v. Certain Real Property and Premises, Known as 890 Noyac Road*, 945 F.2d 1252, 1255 (2d Cir.1991). If unre-

butted, the Court's finding "of probable cause alone will support a forfeiture." *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir.1983). Title 21, U.S.C. § 881(a)(7) provides:

> [N]o property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

This provision, known as the "innocent owner defense," has spawned a dispute concerning construction of the phrase "without the knowledge or consent of that owner." The Fifth Circuit has acknowledged this dispute, but has not yet taken a position. *See United States v. Lot 9, Block 2 of Donnybrook Place*, 919 F.2d 994, 999–1000 (5th Cir.1990).

One view is that any "knowledge" of drug activity precludes a claim of innocent ownership. *See United States v. One Parcel of Land, Known as Lot 111–B*, 902 F.2d 1443, 1445 (9th Cir.1990). Plaintiff agrees with this interpretation and submits that claimants must show both lack of knowledge and lack of consent. According to this construction of the statute, a claimant who is aware of drug activity and overtly manifests lack of consent is, nevertheless, without a forfeiture defense. According to Plaintiff, property owners will "turn a blind eye to narcotics activities by others on their property" if the Court adopts a different construction. Similarly, in *One Parcel of Land, Known as Lot 111–B*, the court was concerned that the statute's policy "would be substantially undercut if persons who were fully aware of the illegal connection or source of their property were permitted to reclaim the property as 'innocent' owners." 902 F.2d at 1445.

█ A second view is that a claimant can successfully assert the innocent owner defense by "proving either lack of knowledge or lack of consent." *United States v.*

*One 107.9 Acre Parcel of Land*, 898 F.2d 396, 398 (3d Cir.1990). *See Certain Real Property and Premises, Known as 890 Noyac Road*, 945 F.2d at 1260. The distinction between these two views is obvious. One must have knowledge of drug activity in order to consent to it. Thus, Plaintiff's construction of the innocent owner defense really means that courts should deny the defense of innocent ownership any time a claimant is "aware" of drug activity on his property. Plaintiff's interpretation excludes an entire class of claimants who are aware of drug activity on their property and through reasonable means, object to it or report it.[5] The Court refuses to follow a construction of the statute that completely disregards the word "consent." Rather, the Court believes the correct construction is that a claimant who cannot assert the "knowledge" branch of the defense because he is aware of narcotics activity, can nevertheless assert the "non-consent" branch.

Plaintiff's argument is incorrect because of its mistreatment of the consent issue. It improperly assumes that a district court will equate a claimant's "blind eye" with lack of consent. The Court does not understand why Plaintiff would not make the reverse assumption: that a claimant who turns her back to narcotics activity on her property and fails to manifest her lack of consent in some overt manner has, in fact, given her consent. The government's argument also incorrectly characterizes the statute's disjunctive construction as contrary to congressional intent. *See United States v. 141st Street Corp.*, 911 F.2d 870, 878 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). *See also* Note, *Tempering the Relation–Back Doctrine: A More Reasonable Approach to Civil Forfeiture in Drug Cases*, 76 Va.L.Rev. 165, 169–71 (1990); Note, *The Innocent Owner Defense to Real Property Forfeiture under the*

---

5. The intent of the § 881 forfeiture provision is to deprive criminals of the tools they use to further their trade. H.R.Rep. No. 1444, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. and Admin.News 4566, 4623–24. An own-er who does not condone illegal activity on his property, but is nevertheless unable to control it through reasonable means, should not automatically acquire criminal status.

*Comprehensive Crime Control Act of 1984,* 58 Fordham L.Review 471, 478–86 (1989). "Requiring a claimant to disprove both knowledge and consent ignores Congress' desire to preserve the property of innocent owners and, as indicated, renders the phrase 'or consent' superfluous, a result that should be avoided." *141st Street Corp.,* 911 F.2d at 878. Claimants may avoid forfeiture of the Stop Six Center by establishing *either* that they had no knowledge of the narcotics activity *or,* if they had knowledge, that they did not consent to it.[6]

### A. *Travis Glenn*

The Stop Six Center has a long history as a situs of illegal narcotics activity. Travis Glenn's affidavit states that he helped his sister develop the Stop Six Center on her lot and operated the Stop Six Restaurant there from 1981 to July 26, 1988. The government has shown probable cause for the belief that Glenn, his employees, his alleged acquaintances and members of the Maddox drug organization used the Stop Six property to foster their illegal trade.

Despite these clear allegations, Glenn's affidavit simply states, "I have no personal knowledge of any illegal narcotics or any other drugs being purchased at this restaurant. Prior to the seizure of this property on October 26, 1988, I was never informed that any drug offenses had been committed there and if in fact any were it was without my knowledge or my consent." He does not refute the facts indicating his knowledge of and consent to narcotics activity on the Stop Six property. In fact, his affidavit does not say that he never engaged in illegal narcotics transactions on the Stop Six property; nor does it directly refute any of the government's other allegations directly implicating him in drug related activity.

■ Glenn may not rest upon mere denials and conclusory statements to effectively refute the government's proof. *Lot*

*9, Block 2 of Donnybrook Place,* 919 F.2d at 994. He must set forth specific facts showing that there is a genuine factual issue that remains for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). The Court must determine whether a rational trier of fact, considering the entire record, could find for the non-moving party or, in other words, whether the non-moving party could successfully resist a directed verdict. *See One 107.9 Acre Parcel of Land,* 898 F.2d at 398 (citing *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

Other than the statement in Glenn's affidavit invoking the innocent owner defense, the Court is unable to find any contradiction of the government's evidence sufficient to generate a genuine issue for trial. In a factually similar case, the Fifth Circuit concluded, "[e]ven if we were to interpret ... [claimant's] affidavit as a denial that he had distributed drugs ... his conclusional statement denying culpability, which fails to controvert any of the facts alleged by the government, cannot defeat the government's motion for summary judgment even though his statement appears in an affidavit." *Lot 9, Block 2 of Donnybrook Place,* 919 F.2d at 998 (citing *May v. Department of the Air Force,* 777 F.2d 1012, 1016 (5th Cir.1985)). Concerning Claimant Glenn's innocent owner defense, the Court decides that a rational trier of fact could not find in his favor.

### B. *Cellie Horton*

■ Cellie Horton's affidavit is similar to Glenn's in that she includes a denial of knowledge or consent. However, Plaintiff did not present evidence indicating Horton's involvement in drug-related activity. Apparently she did not participate in any of the documented transactions at the Stop Six property and was not under investigation for narcotics trafficking. Plaintiff

---

**6.** Although the innocent owner who is aware of drug-related activity on his property must affirmatively demonstrate his lack of consent, the Court cautions that reasonableness limits the burden. The Court does not expect the common land owner to eradicate a problem which our able law enforcement organizations cannot control.

asks the Court to infer her knowledge and consent from the following facts: (1) the history of narcotics activity at the Stop Six Center; (2) the evidence of lookouts in the restaurant; (3) the fact that Glenn is her brother; (4) she lived within a few miles of the property; and (5) her admission that she would stop by the restaurant for dinner.

Horton's affidavit stating her ownership interest and lack of knowledge or consent, raises a genuine issue concerning her innocent owner defense. Her burden at trial is to prove either that she had no knowledge of narcotics activity at the Stop Six Center or, if she had knowledge, that she did not consent to it.

### ORDER

The Court concludes that Plaintiff's evidence shows probable cause for forfeiture of the Respondent Stop Six Center pursuant to the facilatation provision contained in 21 U.S.C. § 881(a)(7). It also concludes that Claimant Travis Glenn is not an innocent owner and any interest he has in the Respondent shall be forfeited.

Genuine issues remain for trial concerning Claimant Horton's innocent owner defense under 21 U.S.C. § 881(a)(7) and the status of the property as a proceed of narcotics transactions under 21 U.S.C. § 881(a)(6). Because Claimant cannot prevail unless she rebuts the government's showing of probable cause, she is entitled to proceed first with her innocent owner defense. Plaintiff is then entitled to rebut Claimant's proof with evidence that she is not an innocent owner, that the property is a proceed of narcotics transactions and, therefore, Claimant is without standing.

Accordingly, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.